MURRELL v. EXCHANGE BANK.

Opinion delivered April 20, 1925.

1. VENUE—COUNTY HAVING TWO DISTRICTS.—Under Crawford & Moses' Digest, § 1176, providing that transitory actions may be brought in any county in which the defendant, or one of several defendants, resides, or is summoned, a suit on a promissory note against the maker and payee may be brought in the Northern District of Arkansas County, where the payee resides, and the maker be sued in the Southern District, though Acts 1913, p. 192, establishing the two districts provides that residents of one district shall not be sued in the other, as the latter act refers only to actions in which all the defendants are residents of the same district.

2. JUDGMENT—EFFECT OF DISCONTINUANCE AS TO CO-DEFENDANT.—Where suit was brought against the maker and the payee of a promissory note, in the Northern District of Arkansas County where the payee resided, the maker being summoned in the Southern District where he resided, held, upon the suit being discontinued as to the payee upon his death, no judgment could thereafter be had against the maker, under Crawford & Moses' Digest § 1178.

3. BILLS AND NOTES—NEGOTIABILITY.—Promissory notes, to be negotiable, must be payable unconditionally and at all events and at some fixed period of time, or upon some event which must inevitably happen.

4. BILLS AND NOTES—NEGOTIABILITY.—The negotiability of a note is not destroyed by the fact that it contains a provision for retention of the title to the property for which the note is given until the note is paid.

5. BILLS AND NOTES—NEGOTIABILITY.—The element of certainty is not wanting in a promissory note where it contains a clause making it payable before the due date at the option of the maker, or where it gives the holder the right to declare all of the series of

the notes due when the maker fails to pay the principal or interest of any note when due.

6. BILLS AND NOTES—NEGOTIABILITY.—Negotiable paper for all practical purposes passes by delivering as money and is representative of money.

7. BILLS AND NOTES—NEGOTIABILITY.—A promissory note given for the purchase price of a pump with retention of title in the payee until the note is paid, and providing that the payee, if he deemed the property unsafe, might take possession of the property, whether the note was due or not, and sell same, the maker agreeing to pay the balance remaining unpaid after application of the net proceeds of the sale, *held* non-negotiable, since the maker's obligation was not absolute and unconditional for the payment of a definite sum of money at all events and without any contingency.

Appeal from Arkansas Circuit Court, Northern District; *George W. Clark*, Judge; reversed.

STATEMENT OF FACTS.

The Exchange Bank sued A. D. Murrell, National Pump & Well Company and J. C. Lloyd, to recover $1,193.15 and the accrued interest alleged to be due it upon a promissory note. A. D. Murrell defended the suit on the ground that the note was given by him to the National Pump & Well Company, for the purchase money of a pump, and that the pump failed to furnish the quantity of water which the company warranted it would furnish. The note sued on is as follows:

"Stuttgart, Arkansas, April 13, 1920.

"$1,193.15

"On or before the 1st day of December, 1920, for value received, I promise to pay to the order of National Pump & Well Company eleven hundred ninety-three and 15/100 dollars, with interest at the rate of 8 per cent. per annum from date until maturity, and 10 per cent. from maturity until paid, payable annually, if not so paid to become principal and bear the same rate of interest.

"It is expressly understood that this note is given for the purchase money of pump, well and appurtenances thereto, title and right of possession to which is reserved in the payee until this note be fully paid. If at any time the payee shall deem the said property to be in any way

unsafe, he may take possession thereof at once, whether this note be due or not, and sell same at public or private sale, and, in consideration and use of said pump, well and appurtenances thereto, I hereby agree to pay the balance of note remaining unpaid after net proceeds are applied. This note is one of a series of one (1) notes, and, in the event default is made in the payment of this note at maturity, all remaining notes shall be and become due at once, at the option of the holder. The maker hereof and all indorsers hereby waive demand, protest and notice. A. D. Murrell.''

The note contained indorsements as follows: "National Pump & Well Co., by J. C. Lloyd; J. C. Lloyd.'' The National Pump & Well Company was the trade name under which J. C. Lloyd operated.

The note was assigned to the Exchange Bank in June, 1920. It was given to it, along with a lot of other notes of J. C. Lloyd, as collateral security for money owed by him to the bank. The bank did not at the time know of any defense to the note.

According to the testimony of A. D. Murrell, he purchased a pump from the National Pump & Well Company, and agreed to pay $4,772.60 for the pump and its equipment. He paid all of the purchase price, except $1,193.15, and executed the note sued on for that sum. There was a written contract for the sale of the pump and its equipment, and the seller warranted that, when it was installed under the contract, it would furnish not less than 1,000 gallons of water per minute. The highest amount of water that was ever furnished by it was 700 gallons, and it ordinarily threw from 500 to 600 gallons of water per minute. J. C. Lloyd was informed of this fact.

One of the representatives of the National Pump & Well Company testified that he saw the pump after it was installed, and that it produced, in his judgment, in the neighborhood of between 700 and 800 gallons of water per minute. It did not come up to the contract under which it was sold.

Other witnesses corroborated the testimony of Murrell to the effect that the pump would not throw more than 700 gallons of water per minute. Other facts will be stated in the opinion.

The jury returned a verdict in favor of the plaintiff, and the defendant Murrell has duly prosecuted an appeal to this court.

*John W. Moncrief,* for appellant.

*Pettit & Leach,* for appellee.

HART, J., (after stating the facts). The first assignment of error is that the court erred in not quashing the service of summons upon A. D. Murrell. The suit was filed on the 6th day of July, 1922, in the circuit court for the Northern District of Arkansas County, Arkansas. Summons was duly issued and served upon A. D. Murrell and J. C. Lloyd. J. C. Lloyd lived in the northern district of Arkansas County, and transacted business under the trade name of National Pump & Well Company. A. D. Murrell lived in the southern district of Arkansas County. The Legislature of 1913 established two judicial districts in Arkansas County, called the Northern and the Southern districts. Acts of 1913, p. 192.

Section four of the act provides that the authority and territorial jurisdiction of the circuit and chancery courts shall extend over the northern district in the same manner as if said district was a constitutional county, and that the circuit and chancery courts shall have original and exclusive jurisdiction of all such cases as are now vested by law in the circuit and chancery courts of the State. The section also contains the following: "Provided, that no citizen or resident of the northern district shall be liable to be sued in the southern district; nor shall any citizen or resident of said southern district be liable to be sued in the northern district in any action whatever."

Section six provides that, in order to ascertain in which of the respective districts actions cognizable in the circuit and chancery courts shall be tried, the said districts shall be considered as separate and distinct

counties, and the mode and place for trying suits shall be determined by the general law applicable to different counties.

When all the provisions of the act are considered together, it was the evident purpose of the Legislature to prevent the inhabitants of each district from being sued outside of their district, where one or more of the inhabitants of the same district were made defendants in the same suit. In other words, the proviso copied above has reference only to actions where all the defendants are residents of the same district. *Pryor* v. *Murphy*, 80 Ark. 150.

It is manifest from the provisions of the act that, where two persons are sued jointly and one of them lives in the northern district and the other in the southern district, the venue may be laid and the service of summons had under the general statutes.

Section 1176 of Crawford & Moses' Digest provides that transitory actions may be brought in any county in which the defendant or one of several defendants resides or is summoned.

J. C. Lloyd resided in the northern district of Arkansas County. A suit on a promissory note is a transitory action. Hence the plaintiff might bring the suit in the northern district of Arkansas County and serve Lloyd with summons in the northern district, where he lived, and Murrell in the southern district, where he resided.

Judgment was rendered in favor of the Exchange Bank against A. D. Murrell on February 20, 1924. J. C. Lloyd had died during the first part of November, 1923.

Section 1178 of Crawford & Moses' Digest is as follows: "Where any action embraced in § 1176 is against several defendants, the plaintiff shall not be entitled to judgment against any of them on the service of summons in any other county than that in which the action is brought, where no one of the defendants is summoned in that county or resided therein at the commencement of the action, or where, if any of them resided, or were

summoned in that county, the action is discontinued or dismissed as to them, or judgment therein is rendered in their favor, unless the defendant summoned in another county, having appeared in the action, failed to object before the judgment to its proceeding against him."

The section provides that, when any action embraced in § 1176 is against several defendants, the plaintiff shall not be entitled to judgment against any of them on the service of summons in any other county than that in which the action is brought, where the action is discontinued or judgment is rendered in favor of the defendants summoned in the county where the action is commenced. As we have already seen, the two districts in this respect are treated as separate counties, and judgment could not be rendered in the northern district against Murrell, who was a resident of the southern district, where the action was discontinued as to Lloyd, who resided in the northern district, and was summoned there, or where judgment was rendered in his favor. J. C. Lloyd died before judgment was rendered against Murrell. This caused a discontinuance of the suit as to him. In law, discontinuance means to abandon or terminate an action. No revival of the action was had against the administrator of J. C. Lloyd after his death, and this operated as a discontinuance of the action against him. Hence the plaintiff was not entitled to judgment against Murrell.

In this connection it may be stated that, if the suit should be revived against the estate of J. C. Lloyd, no judgment could be rendered against Murrell if there should be a judgment in favor of the administrator of the estate of J. C. Lloyd, deceased.

The reliance of Murrell for a reversal of the judgment on the merits is that the note sued on is non-negotiable, and that the court erred in instructing the jury that it was negotiable. In this contention we think counsel is correct. In the first place, it may be stated that this court has held that the negotiability of a note is not destroyed by the fact that it contains a clause merely

providing for the retention of title to the property for which the note is given until the note is paid. *Exchange National Bank* v. *Steele,* 109 Ark. 107. That this holding is in accord with the great weight of authority will be seen by reading the decisions cited in the case-note to 14 Ann. Cas. at p. 1129, and 28 A. L. R. at p. 699. The reason is that the agreement reserving the title of the property in the seller until it is paid for does not affect the note in the least, nor make the time of payment or the amount to be paid in any wise uncertain. It is a distinct and independent agreement, incidental to but not a part of the note. In other words, the clause retaining title in the seller until the property is paid for only relates to the security and not to the indebtedness itself.

In *Chicago Ry. Equipment Co.* v. *Merchants' Bank,* 136 U. S. 268, it was held that a contingency under which a note may become due earlier than the date fixed is not one that affects its negotiability. In that case a series of notes was given for the purchase price of property, and they provided that, upon the failure of the maker to pay the principal or interest of any note in the whole series, the other would become due and payable. That is to say they were due and payable at the option of the holder; but the notes were nevertheless for the payment of money at a fixed period of time, or at least upon an event which must inevitably happen.

Again, in *Ackley School Dist.* v. *Hall,* 113 U. S. 135, it was held that municipal bonds issued under a statute providing that they should be payable at the pleasure of the district at any time before due, were negotiable. The court said that, by their terms, they were payable at a time which must certainly arrive, and that the holder could not exact payment before the day fixed in the bond. Therefore the debtor incurred no legal liability for non-payment until that day passed, and the option of the debtor to pay sooner was nothing more than a payment in advance of its legal liability.

It is well settled that a promissory note, in order that it may be negotiable in accordance with the law

merchant, must be payable unconditionally, and at all events, and at some fixed period of time, or upon some event which must inevitably happen. The element of certainty is not wanting in a promissory note where it contains a clause making it payable before the due date at the option of the maker, or where it gives the holder the right to declare all of the series of notes due when the maker fails to pay the principal or interest of any note when due. In either event, there is no time in which the precise amount due on the note and the time when the maker was compelled to pay could not have been determined by an inspection of the instrument itself.

In the case first mentioned, the additional promise of the maker to pay the money before the date fixed in the note does not abrogate or interfere with his absolute promise to pay at the date fixed. In other words, if the conditional promise is not performed, the absolute promise remains in full force. The option to pay before due, if exercised by the maker, would only be a payment in advance of the legal liability to pay on the date due. In like manner, the right given the payee to declare all the notes of the series due upon the failure of the maker to pay any one of them, does not make the time of payment uncertain and render the note non-negotiable. The maker of the note knows in advance that, if he fails to pay any of the notes or the interest as it falls due, the whole amount may be declared due. His compliance with his unconditional promise to pay would prevent the notes from falling due. In either event the maker of the note could tell from the face of it the exact date upon which he must pay it.

Such is not the case where the note, in addition to a provision for the retention of title, provides that the payee may declare the note due at any time that he deems himself insecure, before maturity, and sell same at public or private sale. This clause renders a note not only payable upon a contingency, but renders the time of payment uncertain. The note not only recites that it is expressly understood that it is given for the purchase price of a

pump, and that the title and right of possession is reserved in the payee until the note is paid, but it also provides that if, at any time, the payee shall deem the property to be in any way unsafe, he may take possession of it at once, whether the note is due or not, and sell the same at private sale. The note further provides that the maker agrees to pay the balance of the note remaining unpaid after the net proceeds are applied.

It is clear that the maker's obligation is not then an absolute and unconditional one for the payment of a definite sum of money at all events and without any contingency. By the law merchant, negotiable paper, for all practical purposes, passes by delivery as money, and is the representative of money. *People's Saving Bank* v. *Bates*, 120 U. S. 556. Therefore a note providing that the vendor may retake possession of the property at any time that he deems himself insecure and sell the same and apply the proceeds to the payment of the note is non-negotiable. An obligation of this character is too uncertain to serve the purpose of commercial paper. By the weight of authority it is held that a condition of this sort introduces an element of uncertainty as to the time of payment and the amount to be paid, and renders the note non-negotiable. The maker cannot at any time tell from the face of the instrument how much he will be compelled to pay, or at what time his liability becomes absolute. *Kimpton* v. *Studebaker Bros. Co.* Idaho 552, 14 Ann. Cas. 1126, and note at p. 1130; *Moyer* v. *Hyde*, 35 Idaho, 204 Pac. 1068, 28 A. L. R. 695, and note at p. 703; *Third National Bank of Syracuse* v. *Armstrong*, 25 Minn. 530; *Killam* v. *Schoeps*, 26 Kan. 310, 40 Am. Rep. 313; *Smith* v. *Marland*, 59 Iowa 645, 13 N. W. 852; *South Bend Iron Works* v. *Paddock*, 37 Kan. 510, 15 Pac. 574; *W. W. Kimball Co.* v. *Mellon*, 80 Wis. 133; *Lincoln Nat. Bank of Lincoln, Ill.*, v. *Perry* (Circuit Court of Appeals, Eighth Circuit), 66 Fed. 887; *First National Bank of Port Huron* v. *Carson*, 60 Mich. 432; *First National Bank of New Windsor* v. *Bynum*, 84 N. C. 24, 37 Am. Rep. 604;

and *Carroll County Sav. Bank* v. *Strother,* 28 S. C. 504, 6 S. E. 313.

There is some conflict in the authorities upon this point, but we think the holding that a condition of this character renders a note non-negotiable is in accord with the weight of authority. It is true that, under the law merchant, many rules respecting negotiable paper may be classed as arbitrary, but they have always been rigidly enforced. It has always been held to be a necessary quality of negotiable paper that it should be certain, unconditional, and not subject to any contingency. There is nothing in our negotiable instrument act which changes the rule established by the law merchant as above set forth.

Having reached the conclusion that the note sued on is not negotiable, and for that reason the judgment must be reversed, it becomes unnecessary for us to pass upon other assignments of error which will not likely be in the record upon a retrial of the case.

For the errors indicated in the opinion the judgment will be reversed, and the cause will be remanded for a new trial.