## SMITH *v.* ZABEL ET AL.

[No. 12,887.    Filed June 30, 1927.]

1. BILLS AND NOTES.—A note executed and payable in Illinois is an Illinois contract and governed by the law of that state. p. 315.

2. BILLS AND NOTES.—*Indiana indorsement of Illinois note governed by law of Indiana.*—The indorsement in Indiana of an Illinois note is a separate and independent contract from the note itself and governed by the law of Indiana.   pp. 315, 317.

3. SET-OFF AND COUNTERCLAIM.—*Facts that may be pleaded in cross-complaint.*—New facts which may be introduced into an action by a cross-complaint are such only as are necessary to enable the court to do full and complete justice to all parties in respect to the cause of action stated in the complaint. p. 315.

4. SET-OFF AND COUNTERCLAIM.—*Pleading introducing matter not germane to complaint improper as cross-complaint.*—A pleading in the form of a cross-complaint which introduces new and distinct matter, not growing out of nor essential to a proper determination of that involved in the complaint, is not a cross-complaint, but a pleading of an original and independent cause of action which is not germane to the issue.   p. 315.

5. SET-OFF AND COUNTERCLAIM.—*Cross-complaint in suit to enjoin collection of note held improper.*—In a suit by the makers of a note to enjoin its collection, indorsers of the note were neither necessary nor proper parties, and a cross-complaint by the holder of the note, in so far as it sought a recovery against such indorsers, was not germane to the issue presented by the complaint, and therefore improper. p. 315.

6. BILLS AND NOTES.—*Effect of provision authorizing extension of time of payment.*—A general provision in a promissory note giving the payee or holder authority to extend the time of payment, either before or after the maturity thereof, renders the instrument nonnegotiable. p. 316.

7. BILLS AND NOTES.—*Nonnegotiable instrument is negotiable under statute so as to confer title on indorsee.*—A promissory note which contains a general provision authorizing an extension of the time of payment is not negotiable under the Negotiable Instrument Law, but is negotiable under our statute (§11342 Burns 1926) so as to vest title in an indorsee or assignee thereof. p. 317.

8. BILLS AND NOTES.—*Indorser's liability.*—The indorser of a nonnegotiable promissory note undertakes that he will pay it on certain implied conditions, not at the place where it is payable, but generally. p. 317.

9. BILLS AND NOTES.—*Indorsee's right to sue indorsers of nonnegotiable instrument.*—While the statute (§11343 Burns 1926) confers on the indorsee of a nonnegotiable note the right to sue the maker in his own name, his right to maintain an action against indorsers is controlled and limited by §11345 Burns 1926, requiring due diligence on his part. p. 317.

10. BILLS AND NOTES.—*When maker of nonnegotiable note must be proceeded against before suing indorser.*—If the maker of a nonnegotiable note is alive in the state where he resided when the note was assigned, and has any property subject to execution, he must be sued before the holder can sue an indorser; and if the maker dies a resident of the state where he resided when the assignment was made, leaving property out of which the note or some part of it might be collected, his estate must be proceeded against before suing an indorser. p. 318.

11. BILLS AND NOTES.—*Failure to raise question of liability of indorsers of nonnegotiable note would not dispense with proof of necessary facts.*—In an action by an indorsee of a nonnegotiable note jointly against the maker and indorsers, the failure to raise the question of the negotiability of the note by demurrer or answer would not dispense with proof by the plain-

tiff of the necessary facts to show liability on the part of the indorsers.   p. 319.

12.   EQUITY.—*Rules of law applicable in action by indorsee against makers and indorsers of nonnegotiable note when cross-complaint filed in suit to enjoin collection.*—In a suit by the makers of a nonnegotiable note to enjoin the collection thereof, the holder of the note filed a cross-complaint seeking recovery against the makers and indorsers for the amount of the note, and the original suit was dismissed.   *Held,* that the rights of the parties upon the dismissal of the complaint were such as would have been presented if the cross-complaint had been filed as an original action, and that, though the action be considered as remaining in equity, the rules of law as applied in an action at law by an indorsee against an indorser would be applicable, and the cross-complainant would still be required to show a good excuse for joining the makers and indorsers in the same action. p. 320.

13.   BILLS AND NOTES.—*Judgment for indorser of nonnegotiable note was proper in joint action against makers and indorser in absence of evidence of makers' insolvency.*—In an action by an indorsee of a nonnegotiable note against the makers and indorsers jointly, a judgment for an indorser was properly given where there was no evidence of the insolvency of the makers, which must be shown in order to authorize a recovery against indorsers in a joint action against the makers and indorsers.   p. 321.

14.   NEW TRIAL.—*Joint motion for new trial.*—There was no error in overruling a motion for a new trial by all the defendants where there was no contention that the decision was not correct as to three of them.   p. 321.

From Carroll Circuit Court; *Benjamin F. Carr,* Judge.

Suit by Fred D. Zabel and another against Ward A. Smith and others to enjoin the collection of a note, in which the named defendant filed a cross-complaint against plaintiffs and his codefendants. From an adverse judgment on his cross-complaint, the cross-complainant appeals. *Affirmed.* By the court in banc.

*Joseph B. Ross* and *Hanna & Hall,* for appellant.

*Clarence R. Cowger* and *George W. Kassabaum,* for appellees.

McMAHAN, J.—On August 27, 1920, Fred D. and John Zabel executed their promissory note whereby they agreed to pay to Wilbur D. Smith $3,000 on March 1, 1921. This note was dated at Cooksville, Illinois, and was payable at the State Bank of Cooksville, Illinois. It contains a power of attorney authorizing any attorney at law to appear in any court of record and confess judgment against the makers in favor of the payee or holder. Following this power of attorney is the provision that, "No extension of the time of payment, with or without our knowledge, by the receipt of interest, or otherwise, shall release us, or either of us, from the obligation of payment."

Before maturity, the payee, Wilbur D. Smith, and appellee Tazewell J. Geyer, the latter being an accommodation indorser, for value, assigned and indorsed the note to appellant. On the day the note became due, it was presented to Zabel and Zabel at the State Bank of Cooksville for payment, and payment being demanded, was refused. The note was then protested and returned to, and received by, appellant, as he says, March 3, 4 or 5, 1921. As soon as appellant learned the note had not been paid, he notified appellee Geyer of the nonpayment and dishonor of the note and demanded payment of him. Appellee Smith at that time was in California. On March 14, 1921, Zabel and Zabel commenced an action in the circuit court of White county against appellant Ward A. Smith and appellees Wilbur D. Smith and Tazewell J. Geyer and the bank which, as appellant's agent, had forwarded the note to the Cooksville bank for collection, asking that the note be declared void, that it be canceled because of fraud in its procurement, and asking that the defendants therein be restrained and enjoined from taking any steps to enforce collection. A temporary restraining order was issued on March 14, 1921, and by agreement this order

was continued in force until further order of the court. On April 29, 1921, appellant filed a cross-complaint against the two Zabels, the makers of the note, and Wilbur D. Smith and Tazewell J. Geyer, indorsers, alleging the execution of the note, its assignment and indorsement to him, and asking judgment against the makers and indorsers for the amount of the note. Wilbur D. Smith and appellee Geyer answered the cross-complaint by a general denial, while Zabel and Zabel were defaulted, they having theretofore dismissed their action to have the note canceled and to enjoin its collection. There was a finding and judgment in favor of appellant against Wilbur D. Smith, Fred D. Zabel and John Zabel for the amount of the note, and a finding and judgment in favor of Geyer that appellant take nothing as against him.

The cross-complainant, hereafter referred to as "appellant," filed a motion for a new trial as to all of the defendants named in his cross-complaint. This motion was overruled; hence this appeal. The error assigned is that the court erred in overruling the motion for a new trial, the specifications of which are that the decision of the court is: (a) Not sustained by sufficient evidence; and (b) that it is contrary to law.

The cross-complaint sets out a copy of the note and the law of Illinois on negotiable instruments and alleges that under the law of that state as pleaded, the note was negotiable as an inland bill of exchange. The correctness of this theory or the sufficiency of the complaint to state a cause of action as against the indorsers Smith and Geyer was not raised by demurrer, nor was the right of appellant to sue the indorsers and the makers of a nonnegotiable promissory note in the same action presented by any answer or motion prior to trial.

The note in question being an Illinois contract is governed by the law of that state. The indorsement is

an Indiana contract, distinct and independent of

1, 2.   the note itself, and is governed in all respects by the law of this state.

The liability, if any, of appellee Geyer as indorser, is in no way connected with the liability of Zabel and Zabel as makers of the note. The liability of Geyer is

3, 4.   entirely independent of the cause of action alleged in the complaint of Zabel and Zabel to enjoin the collection of the note. A decree in favor of or against the plaintiffs on their complaint would not have affected the right of appellant to recover from appellee Geyer on his indorsement. As was said by the Supreme Court in *Wainwright* v. *P. H. & F. M. Roots Co.* (1912), 176 Ind. 682, 694, 97 N. E. 8: "It is settled by our decisions, that the new facts which may be introduced into a pending action by means of a cross-complaint under our counterclaim section of the code, which may embrace recoupment or matters cognizable in the cross-bill in equity, are such only as are necessary for the court to have before it in deciding the questions raised in the original action to enable it to do full and complete justice to all * * * parties before it in respect to the cause of action upon which the complaint rests. If a defendant attempts to go beyond this, and to introduce by a cross-complaint in counterclaim new and distinct matter which does not grow out of that involved in the complaint, and which is not essential to the proper determination of it, although he may show a perfect case against the plaintiff, his pleading will not be a cross-complaint, but an original and independent cause of action, and as such it is not germane to the issue."

As between appellant and the Zabels, the plaintiffs in the original action, appellant's so-called cross-complaint was, as a matter of law, a counterclaim, and in

5.   order to do full and complete justice to all of the parties before the court, in respect to the cause

of action upon which the complaint of the Zabels rested, appellees Smith and Geyer were neither necessary nor proper parties.    In so far as this cross-complaint sought a recovery against the indorsers on the note, it was an original and independent action, and as to the issue thus raised between appellant and the indorsers, it was not germane to the issue presented by the original complaint for injunction.

Geyer, hereafter referred to as "appellee," is the only appellee who has filed a brief, and he contends that the provision in the note relating to extension of time

6.    of payment makes the time of payment uncertain and thus renders the note nonnegotiable.    The Supreme Court of Illinois in *Stitzel* v. *Miller* (1911), 250 Ill. 72, 95 N. E. 53, 34 L. R. A. (N. S.) 1004, held that a provision in a note, payable at a time certain, giving the holder the option to extend the payment as he deemed proper in case the note was not paid at *maturity,* did not destroy the negotiability of the instrument.    This court, however, has held to the contrary.    *Wayne Co. Nat. Bank* v. *Cook* (1920), 73 Ind. App. 404, 127 N. E. 773.    It is to be observed that the provision in the note now under consideration is not limited to an extension given after maturity.    The provision is general and applies to an extension given before as well as after maturity.    No law of Illinois, statutory or otherwise, is pleaded or proved to the effect that a note containing a provision like the one now under consideration is negotiable under the law of that state.    And we hold that a general provision giving the payee or the holder of a promissory note, otherwise negotiable, general authority without regard to the maturity of the note to extend the time of payment renders the instrument nonnegotiable.    See *Mitchell* v. *St. Mary* (1897), 148 Ind. 111, 47 N. E. 224; *Matchett* v. *Anderson, etc., Works* (1902), 29 Ind. App. 207, 64

N. E. 229, 94 Am. St. 632; *Rossville State Bank* v. *Heslet* (1911), 84 Kans. 315, 113 Pac. 1052, 33 L. R. A. (N. S.) 738.

The note in suit is negotiable under §11342 Burns 1926, to the extent that the written indorsement on the back thereof vested title in appellant. It is not 2, 7-9. negotiable, however, as an inland bill of exchange. An indorser of such a promissory note undertakes that he will, upon certain implied conditions, pay the note; not at the place where the note is payable, but generally; and his contract is governed by the law of the place where it is made, and not by the law of the place where the note is payable. *Hunt* v. *Standard* (1860), 15 Ind. 33, 77 Am. Dec. 79. While §11343 Burns 1926 gave appellant the right to sue in his own name and recover of the makers of the note, his right to maintain an action against the indorsers is controlled and limited by §11345 of the same statute, which provides that: "Any such assignee, having used due diligence in the premises, shall have his action against his immediate or any remote indorser."

Appellee, in order to sustain the decision of the court holding him not liable, says: (1) The complaint and evidence show that the makers of the note in suit were nonresidents of the state at the time of the transfer and the assignment of the note to appellant, and that appellant must pursue the makers with due diligence or show that such diligence would have been unavailing in order to maintain his suit against him (Tazewell J. Geyer), which was not done; (2) that since the power of attorney, which was a part of the note, authorized any attorney at law to appear in any court of record, in or out of term, and confess judgment against the makers in favor of the payee or holder of the note, diligence required that appellant should have taken judgment against the makers in Illinois on the date the note

was presented to them for payment; and (3) that a joint suit cannot be maintained against the makers and indorsers of a nonnegotiable note except where an excuse exists for the failure to bring a separate suit against the maker or where there are facts which render the indorsers immediately liable to the holder of the note, and no facts justifying a joint action against the makers and indorsers are alleged or proved.

The Supreme Court, in *Mix* v. *State Bank* (1859), 13 Ind. 521, in speaking of the liability of the indorser of a note not negotiable by the law merchant, said: "Upon such notes, the indorser is not liable to the holder, or indorsee, till the latter has prosecuted the maker, with due diligence, to judgment and execution, unless an excuse * * * exists; and where an excuse is relied upon, it must be averred in the complaint. * * * In the case at bar, the note is not governed by the law merchant, and no facts are alleged, in the complaint, showing a liability on the part of the indorsers to the holder, before the termination of separate proceeding, fruitless in whole or in part, against the maker." The judgment in that case was against the maker and indorser in the lower court, but was reversed as to the indorser. See, also, *Roberts* v. *Masters* (1872), 40 Ind. 461; *Thompson* v. *Campbell* (1890), 121 Ind. 398, 23 N. E. 397; *Dick* v. *Hitt* (1882), 82 Ind. 92; *Mitchell* v. *St. Mary, supra.*

If the maker of such a note be alive in the state where he resided when the assignment was made, and be liable on the note, and has any property subject to execution, he must be sued before the holder can sue the indorser; and if the maker die a resident of the state where he resided when the assignment was made, leaving property out of which the note or some part of it might be collected, his estate, if the maker was liable when living, must be proceeded against before

suing the indorser. *Huston* v. *Fatka* (1903), 30 Ind. App. 693, 701, 66 N. E. 74; *Clark* v. *Trueblood* (1896), 16 Ind. App. 98, 44 N. E. 679.

In *Couch* v. *First Nat. Bank* (1878), 64 Ind. 92, suit had been brought on a nonnegotiable note against the maker and indorsers the next day after the note became due, it being alleged that the maker was wholly and notoriously insolvent. The complaint was afterwards dismissed as to the maker. In speaking of the liability of the indorsers and the right under the facts to sue the maker and the indorsers in the same action, the court said: "The appellants were jointly liable to the plaintiffs as one of the parties to the notes, being indorsers thereof, because of the insolvency of the maker. The maker was liable in his capacity as maker. The case, therefore, was one in which the action might be brought against the maker as one party, and the indorsers as another party, liable to the holder of the note. It would seem that makers and indorsers could not be joined in an action, except in cases where the indorsers are liable without a suit having been first brought against the makers."

The cross-complaint in the instant case, whereby appellant sued the makers and indorsers in the same action, was based upon the theory that the note was negotiable as an inland bill of exchange. No question as to the negotiability of the note or the sufficiency of the complaint to justify a joint action against the makers and the indorsers was raised by demurrer or answer. But a failure to so raise that question did not dispense with the proof necessary to maintain such an action.

Appellant concedes that, in actions at law upon a nonnegotiable instrument, the maker must first be exhausted, or a reasonable excuse, such as insolvency, given for not so doing, before suit can be brought

against an indorser. He contends, however, that this rule is limited to actions at law upon such instruments; that the present action, as originally instituted by the makers of the note to enjoin its collection, invoked the equitable jurisdiction of the court; that when he filed his cross-complaint, the rules of equity applied to the issues presented by such cross-complaint and the answers thereto, and that, notwithstanding the original complaint had been dismissed, the action on the cross-complaint remained and continued an action within the jurisdiction of equity, so that it became the "duty of the court to settle all of the rights of all of the parties, in all of their relations to the subject-matter, in order that the entire controversy may be settled completely."

If it be conceded that the issues presented by the cross-complaint remained in equity after the dismissal of the complaint, it does not mean that appellant is entitled to prosecute a joint action against the makers and the indorsers of the note without showing diligence or an excuse for not first exhausting the makers before proceeding against the indorsers. The rights of the parties upon the dismissal of the complaint were such rights as would have been presented if the cross-complaint had been filed as an original action. The rights of appellant as presented by his cross-complaint were legal rights and, in determining such rights, if the action be considered as remaining in equity, under the maxim that "equity follows the law," the rules of law as applied in an action at law by an indorsee against an indorser would be applicable, and appellant would still be required to show a good excuse for joining the makers and indorsers in the same action.

In *Brown* v. *Bunn* (1861), 16 Ind. 406, a judgment in favor of the holder of a nonnegotiable note against the makers and an indorser, was, on appeal by the in-

dorser, reversed because of failure to allege facts sufficient to charge the indorser.

Rose v. Park Bank (1863), 20 Ind. 94, 83 Am. Dec. 306, was an action against the maker and two indorsers. One indorsement was governed by the law of New York. The other was governed by the law of this state. The judgment against the Indiana indorser was reversed, it being held he "could not be sued till after suit against the maker, or a sufficient excuse for its omission."

And in Buchanan v. Berkshire Life Ins. Co. (1883), 96 Ind. 510, 534, a judgment against the maker and indorser of such a note was reversed as to the indorser, because "there was no evidence upon the trial of any effort to collect from the makers by suit or otherwise; nor was there any evidence of the insolvency of such makers."

Appellant concedes that, upon the evidence, the note in question is not negotiable. This being true, his right to recover a judgment against appellee as indorser depended upon proof of diligence or an excuse for not first proceeding to execution against the makers. If it be conceded that, under the facts as disclosed by the record, appellant was diligent in suing the makers, there is no evidence tending to show the insolvency of the makers, which must be shown in order to authorize a recovery against the indorsers in a joint action against the makers and the indorsers. This being true, the decision of the court in favor of appellee Geyer was correct, and the motion for a new trial properly overruled.

Appellant's motion for a new trial was joint as to all four defendants. Appellant makes no claim that the decision was not correct as to three of the defendants. The decision of the court being correct as to three of the defendants, there was no error in

overruling the motion asking for a new trial as to all defendants.

Judgment affirmed.

Dausman, J., absent.