GUIO ET AL. *v.* LUTES

[No. 14,468. Filed February 16, 1933. Rehearing denied June 9, 1933.]

*Anderson, Mayfield & Rynerson,* for appellants.

*Solomen Bortz, Thomas A. Daily* and *Wilson S. Daily,* for appellee.

DUDINE, J.—This appeal arises out of an action brought by the appellee against appellants on a promissory note which was in words and figures as follows: "Ninety days after date I promise to pay to the order of Guio and Mumma, One Hundred Seventy-five and no/100 Dollars, negotiable and payable at First National Bank, Brownstown, Indiana, with interest at the rate of 8 per cent per annum and attorneys fees. For value received without any relief from valuation and appraisement laws. The drawers and endorsers severally waive presentment for payment, protest and non-payment of this note. The express condition of the sale and

purchase of one No. 4 Rossenthal corn husker and one Parrat tractor for which this note is given is such that title and ownership of the above described property does not pass from said Guio and Mumma until this note with interest is paid in full.

*"Guio and Mumma has full power to declare this note due, and take possession of said property at any time they may deem this note insecure, even before the maturity of the same."* (Our italics.)

Appellants were sued as endorsers, without first suing the maker of the note and without joining the maker in the suit. The issues were made by a complaint in one paragraph to which the defendants filed three paragraphs of answer, the first in general denial, the second alleging payment, and the third alleging endorsement without recourse. Plaintiff filed a reply of general denial to the second and third paragraphs of answer. Upon these issues the cause was submitted to the court for trial without the intervention of a jury. The court found for appellee and appellants duly filed a motion for a new trial on the grounds that the finding was contrary to law, and was not sustained by sufficient evidence. The court overruled appellants motion for new trial, and rendered judgment on the finding, in favor of appellees, from which judgment appellant's appeal to this court assigning the overruling of said motion for new trial, and no other grounds, as reversible error.

The reasons given by appellants for their contentions are, that the clause in the note, which is italicized in this opinion, made said note non-negotiable, and that the evidence shows that the assignee (appellee) did not exercise due diligence against the maker. No other objections to the content of the note are raised on appeal.

"An instrument to be negotiable must conform to the following requirements: . . . 3. Must be payable on demand, or at a fixed or determinable future time." Sec. 11360, Burns 1926.

"An instrument is payable on demand: 1. Where it is expressed to be payable on demand, or at sight, or at presentation; or 2. In which no time for payment is expressed." Sec. 11366, Burns 1926.

It is clear that the note in suit does not come within either of the classes of the notes which are payable on demand.

"An instrument is payable at a determinable future time, within the meaning of this (Neg. Inst.) act, which is expressed to be payable: 1. At a fixed period after date or sight; or 2. On or before a fixed or determinable future time specified therein; or 3. On or at a fixed period after the occurence of a specified event, which is certain to happen." Sec. 11363, Burns 1926.

The note in suit does not expressly provide that it is payable "at a fixed period after date or sight." On the contrary it expressly provides that the payees may declare it due at any time they may deem it insecure. The date of maturity is uncertain, and remains uncertain until the payees "deem themselves insecure." Hence this note does not fall in that class of notes covered by subsection one of Sec. 11363, Burns 1926.

The note in suit does not expressly provide that the note is payable "on or at a fixed period after the occurence of a specified event which is certain to happen." The maturity of this note does not depend upon, nor relate to any "occurrence of a specified event" unless it be agreed that it relates to the "deeming," by the payees, that they are insecure, and that such "deeming" is an "occurence of a specified event," within the meaning of said subsection three of Sec. 11363, Burns 1926. Even though it be assumed that the "deeming" by the payees that they are insecure, be an "occurence of a specified event" within the meaning of said subsection, still it cannot be seriously contended that it is an occurence of a specified event which is certain to happen.

Hence the note in suit does not belong to the class of notes covered by subsection three of Sec. 11363, Burns 1926.

We have shown that the note in suit does not conform to the requirement that it "must be payable on demand or at a fixed future time," unless it can be successfully contended that the note is expressed to be payable "on or before a fixed or determinable future time specified therein."

It is apparent that the note does not expressly provide that it is payable "on or before a fixed . . . time specified therein." In fact it provides that the time of payment may be fixed by the payees.

It might be contended that the provision authorizing the payees to declare the note due when they deem themselves insecure provides a "determinable future time" within the meaning of said subsection two of Sec. 11363, Burns 1926, but even though that be assumed it can not be seriously contended that the time of so deeming is specified in the note. This note does not indicate when it will be payable. It may be payable one day after date, or ten days after date, in fact it will become payable at a time *to be* fixed by declaration of the payees after they deem themselves insecure.

We have not found any decisions of the courts of appeal of this state which determine whether or not a clause similar to the one objected to in this suit, affects the negotiability of the note in which it is inserted.

The great weight of authority in the courts of appeal of the several states, both before and since the adoption of the Uniform Negotiable Instruments Act is to the effect that a provision which gives the holder of the note unlimited authority to accelerate the maturity of the note, "when he deems himself insecure," makes the time of payment uncertain and indefinite, hence renders

the note non-negotiable. 3 R. C. L. 910; 34 A. L. R. 888; 72 A. L. R. 268; *Great Falls Nat. Bk.* v. *Young* (1923), 67 Mont. 328; *Puget Sound Bk.* v. *Wash. Pav. Co.* (1917), 94 Wash. 504, 162 Pac. 870; *Holliday St. Bank* v. *Hoffman* (1911), 85 Kans. 71, 116 Pac. 239, 35 L. R. A. (N. S.) 390, Ann. Cas. 1912D 1; *Peoples Bank* v. *Porter* (1922), 58 Cal. App. 41, 208 Pac. 200; *Murrell* v. *Exchange Bk.* (1925), 168 Ark. 645, 271 S. W. 21, 44 A. L. R. 1391. Chafee in 32 Harvard Law Review 774 finds fault with the weight of authority on this point, but frankly admits that the weight of authority is as we have indicated. Brannan Neg. Inst. Law, 5th Ed., p. 140 does likewise, and follows the reasoning given in Chafee's article.

The clause objected to in this suit gave the payees the power to declare the note payable at any time they deemed themselves insecure. The maturity of the note depended only upon the determination by the payees that they were insecure. When that would happen, no one could ascertain by an examination of the note.

It might be contended that the maturity of notes payable in installments containing a provision that upon the maker's failure to pay one installment the whole note becomes due, is likewise uncertain; that one can not tell by looking at an installment note, when it will actually become due. Be that as it may—such provisions are permitted in negotiable instruments by Sec. 11361, Subs. 3 of Burns 1926.

We hold that the note in suit was non-negotiable.

The note being non-negotiable the plaintiff had to prove inability to recover from the maker, before he was entitled to recover from the payees as endorsers. Sec. 11345, Burns 1926. Appellee's strongest evidence on this subject was his own testimony that he "tried every means in the world to

collect this note from Frank George (maker). . . . I asked him to pay it and he said he couldn't . . ." There is no testimony showing the "means" used by the plaintiff to collect the note from the maker.

On cross-examination plaintiff testified that he did not bring suit against the maker because he did not think the maker was worth it, that he got the note from another fellow and thought that was the fellow he had to go to, to get his money. We hold that the evidence was insufficient to prove that plaintiff had used due diligence to collect from the maker, before suing the endorsers. We think the evidence shows that plaintiff did not know he had to exercise due diligence to collect from the maker before suing the endorsers, and that he failed to do so.

The evidence shows without dispute that the maker was living and residing in the town of Maumee, Indiana, the home of the plaintiff, at the time the note was assigned to the plaintiff, and that he owned property. In *Smith* v. *Zabel* (1927), 86 Ind. App. 310, 318, 157 N. E. 551, this court said: "If the maker of such a note be alive in the state where he resided when the assignment was made, and be liable on the note, and has any property subject to execution, he must be sued before the holder can sue the indorser. . . ."

For the reasons given, the judgment is reversed and the lower court is ordered to sustain appellant's motion for a new trial.