[Civ. No. 4158. Fourth Dist. Nov. 21, 1951.]

RUBY A. THOMPSON, as Executrix, etc., Respondent, v. L. E. SPRAGUE, Appellant.

Winthrop O. Gordon for Appellant.

George E. Bradley and Frank L. Bowman for Respondent.

MUSSELL, J.—Roland Thompson brought this action to recover the purchase price paid by him to defendant for a used 1942 GMC 2½ ton dump truck. Recovery was sought on the grounds that defendant failed to complete the transfer of title to the truck involved by failing to comply with the provisions of section 186 of the Vehicle Code and that defendant misrepresented the mechanical condition of the truck. The trial court gave judgment for plaintiff on both grounds. After this appeal was filed Roland Thompson died and Ruby A. Thompson was substituted as party plaintiff and respondent. The question presented for our consideration is whether the evidence is sufficient to support the findings and judgment.

On or about March 30, 1947, plaintiff, an attorney, entered into negotiations with the defendant, who was in the trucking business, for the purchase of a used truck for use by plaintiff's sons to haul sand and rock in connection with a building-material business at Desert Hot Springs in Riverside County. Defendant pointed out the truck to plaintiff and stated that it was in good condition; that it would do the intended work all right and give plaintiff many months of good service; that if plaintiff purchased the truck, defendant would put it in "first class" mechanical condition before it was taken away; that he and his mechanic would "go over" the truck and "check it" and if any new parts were required, they would be put in at defendant's expense; that when the truck was turned over to plaintiff, it would be in good mechanical condition and would give no trouble. The purchase price agreed upon was the sum of $2,000, and on April 1st the parties met at a bank where the entire purchase price was paid to defendant. Defendant endorsed and delivered the certificate of own-

ership ("pink slip") to the bank, which took a chattel mortgage to secure repayment of the part of the purchase money advanced by it. In response to the banker's request for the registration certificate ("white slip") defendant stated that it had not yet come back from Sacramento but that "it would be back in two or three days." The bank sent the pink slip to the Department of Motor Vehicles and it was thereafter retained by the department. The defendant received the white slip and the 1947 license plates for the truck on or about April 27, 1947, but did not tender them to plaintiff until September 30th of that year. Plaintiff served defendant with a notice of rescission of the contract to purchase on September 20th and declined to accept the white slip and plates tendered 10 days later. Between April and September plaintiff had requested the white slip of defendant on several occasions, one of which requests was by letter mailed to defendant on June 18, 1947.

█ Section 186 of the Vehicle Code, insofar as is material here, provides as follows:

"(a) . . . No transfer of the title or any interest in or to a vehicle registered hereunder shall pass and any attempted transfer shall not be effective unless and until the parties thereto have fulfilled either of the following requirements:

"(1) . . . The transferor shall have made proper endorsement and delivery . . . of the registration card to the transferee as provided in this code and the transferee has delivered to the department or has placed in the United States mail, addressed to the department, such certificate and card when and as required under this code with the proper transfer fee and thereby makes application for transfer of registration . . . or

"(2) . . . The transferor shall have delivered to the department or shall have placed in the United States mail addressed to the department the appropriate documents for the registration or transfer of registration of such vehicle pursuant to such sale or transfer . . ."

Admittedly, the plaintiff did not receive the 1947 license plates for the truck in question or the white slip prior to the service of his notice of rescission of the contract and it appears from the evidence that plaintiff was unable to obtain the pink slip from the Department of Motor Vehicles. In *San Joaquin Valley Sec. Co.* v. *Prather*, 123 Cal.App. 378, 383 [11 P.2d 45], this court held that under the provisions of section 45 of the Vehicle Act, as it existed in 1927 (Statutes 1925, p. 402) the

division was not authorized to reregister a car or issue a new certificate of ownership or a new certificate of registration until it had received both the certificate of ownership and certificate of registration as provided in the statute. In *Parke* v. *Franciscus*, 194 Cal. 284, 293 [228 P. 435], the court held that the failure of the transferee of the "ownership" in a car to procure the registration certificate properly endorsed does not make the sale void *ab initio* but in the terms of the statute it is incomplete. In *Wehrle* v. *D. E. McDaneld, Inc.*, 96 Cal.App. 356, 358 [274 P. 421], where a defendant failed to complete the sale by obtaining and delivering to the purchaser the certificate of registration and ownership as provided by the Vehicle Act, it was held that the purchaser became entitled to a return of the money paid by him.

It clearly appears under the circumstances here shown that plaintiff was never able to obtain the certificate of ownership, the plates or certificate of registration to the truck in question prior to September 20, 1947, and not being able to obtain title, he was in a position to rescind the contract, which he did.

Defendant argues that it was the duty of the Department of Motor Vehicles to make the necessary transfer because the white slip was in its possession at the time of the receipt by it of the pink slip. There is no evidence indicating that the department was notified of the situation or requested to transfer or deliver the white slip to plaintiff. The evidence shows that the white slip and plates were actually returned to the defendant by the department on April 27, 1947. Obviously, there could be no duty on plaintiff's part to send the white slip to the department since it was not received by him and was in defendant's possession at all times after April 27, until notice of rescission of the contract.

Defendant's second contention is that the evidence is insufficient to support the judgment under the allegations of the third cause of action based upon alleged misrepresentations of defendant which induced plaintiff to purchase the truck. In this connection, the evidence shows that following the purchase transaction of April 1st, the truck was left with defendant for about a week before its delivery in order that the defendant might "check it over" and put in "A-1 condition."

Plaintiff's son, Charles T. Thompson, took delivery of the truck from the defendant and drove it to his place of business in Desert Hot Springs and on the trip experienced trouble

with the brakes. Shortly thereafter, plaintiff's son drove the truck to Los Angeles, intending to pick up a half ton of steel but experienced so much trouble with the truck's faulty brakes, its lack of power and its excessive oil consumption that he did not attempt to obtain the steel. A few days later plaintiff's sons attempted to haul a three ton load of building blocks but the truck was unable to pull the load. The truck was then returned to the defendant for repairs, and after it was returned to plaintiff, it was used on a few occasions to haul light loads and equipment. The truck did not perform satisfactorily and it was again delivered to the defendant. Subsequently, Mr. Reynolds, a mechanic assisting one of plaintiff's sons, attempted to use the truck in hauling crushed rock from Whitewater to Desert Hot Springs, a distance of 10 miles. Reynolds testified that the truck had very little power, compared to other trucks which he had driven over the same route; that a connecting rod burned out despite the fact that the motor had plenty of oil in the crankcase; that the motor burned about three quarts of oil each round trip of 20 miles while hauling these loads; that he dismantled the motor and found that the crankshaft was worn badly and was "out-of-round or oval," with the result that it could not retain a connecting rod bearing for very long; that the cylinders were so worn that they were oval and "out-of-round" and could not be corrected by piston rings alone; that he tested the compression which should have been between 80 and 90 pounds if the motor were in good mechanical condition and found that it was down to 40 to 75 pounds on the various cylinders. Reynolds further testified that he was obliged to change the connecting rods and pistons in this motor twice and on the second occasion this change was made at a garage in Colton, where the truck remained until it was returned to defendant's yard for the third and last time in August, 1947.

There is ample evidence in the record from which the trial court could and did conclude that the truck in question was not in good mechanical condition as represented to plaintiff by the defendant. The findings are sufficiently supported by the evidence.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 17, 1952. Schauer, J., voted for a hearing.