GREYHOUND CORPORATION, Appellant, *v.* GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORP., LTD., Respondent.

First Department, November 7, 1963.

*Clarence E. Mellen* of counsel (*James J. McIntosh, Jr.*, with him on the brief), for appellant.

*Milton Zwisohn* of counsel (*Barnett J. Nova* with him on the brief; *Multer, Nova & Seymour*, attorneys), for respondent.

BASTOW, J. This action was brought pursuant to section 167 of the Insurance Law to recover the monetary limit under a so-called "garage liability policy" which had been issued by defendant to Dorp Motors, Inc. (herein "Dorp"), an automobile dealer in Schenectady. Summary judgment has been granted dismissing the complaint. While plaintiff moved at Special Term for summary judgment in its favor its appeal is limited to a review of that part of the order granting defendant's motion.

In June, 1954 Dorp sold a truck to third parties, doing business as "Jimmy and Rocky" (herein "J & R") receiving cash and another truck in payment. Dorp loaned the purchasers one of its dealer's license plates but did not file with the Commissioner of Motor Vehicles the statement required by section 63 (present § 416) of the Vehicle and Traffic Law. Three days later the truck owned by J & R but bearing Dorp's registration plate collided with a Greyhound bus in Essex County resulting in serious injuries to several passengers in the bus.

The present action was dismissed upon the ground that Dorp did not notify defendant (its insurance carrier) of the accident until October 11, 1954 — some 105 days after the accident. This being a crucial issue we relate the activities of Dorp's officers before passing to subsequent happenings. The policy issued to Dorp contained the familiar provision that "When an accident occurs written notice shall be given by or on behalf of the insured to the company * * * as soon as practicable." One Witbeck, the general manager of Dorp, states that on the night of the accident he received a telephone communication from the State Police that the latter had Dorp's license plate. The police apparently first told Witbeck that a Dorp truck had been involved in the accident but in the course of the conversation Witbeck learned that it was the truck that had been sold to J & R. He relates that inasmuch as the truck had been sold he "saw no reason to make any report and consequently did not report this accident * * * until I received a summons on October 10, 1954."

This summons was an action brought in Essex County by one Amanda Young against Central Greyhound Lines, Inc. (not this plaintiff), J & R and Dorp. Defendant disclaimed any liability and refused to defend Dorp. Following trial judgment for $45,000 in favor of the plaintiff was entered against the three defendants.

The judgment was paid by Central Greyhound and J & R. There-after, Central Greyhound moved pursuant to section 211-a of the Civil Practice Act and was awarded judgment against Dorp for a sum in excess of $7,500. This judgment was subsequently assigned to plaintiff by Central Greyhound with which the latter had merged in November, 1955.

Subsequently other injured bus passengers, including three (Thomas, Eimess and Demarest), who are assignors of plaintiff in the present action, instituted actions against the same defendants, including Dorp. These resulted in judgments against all defendants, including Dorp, but upon appeal the judgments were reversed by this court as to all defendants, except Dorp, which had not appealed (*Thomas* v. *Central Greyhound Lines,* 6 A D 2d 649; *Thomas* v. *Polimeni,* 8 A D 2d 606). Prior to retrial the claims of this group of plaintiffs were settled by Central Greyhound and J & R and the Thomas, Eimess and Demarest judgments against Dorp were assigned to plaintiff.

These assignments upon which plaintiff bases a portion of its cause of action present the second issue in the case. Defendant, while conceding plaintiff's right to sue for contribution in the Young action, contends as to the other three actions that at the time plaintiff took the assignments from Thomas, Eimess and Demarest there was no outstanding judgment against Central Greyhound, it having been reversed on appeal and a new trial ordered; that in the absence of such judgment neither Central nor plaintiff had any statutory right of contribution from Dorp and to this extent its present action must fall.

We consider first the issue posed by defendant's disclaimer of liability because of the claimed delay of Dorp in giving notice of the accident. We do not agree with Special Term that this was such an unreasonable delay as a matter of law that vitiated the contract between defendant and Dorp and mandated a dismissal of the complaint.

While the general principle has been enunciated that the failure of an insured to give timely notice of the accident vitiates the contract " It is also well settled that the reasonableness of a delay, where mitigating circumstances such as absence from the State or lack of knowledge of the occurrence or its serious-ness are offered as an excuse, is usually for the jury ". (*Deso* v. *London & Lancashire Ind. Co.,* 3 N Y 2d 127, 129.)

We find such mitigating circumstances in the instant case. This is not the ordinary occurrence where a callous motorist is involved in an accident and goes his way without bothering to notify his insurer. It is apparent from the affidavit of the officer of Dorp that he little imagined that vicarious liability was

imposed by law upon Dorp by its act in loaning a license plate to the purchaser of a truck. (Cf. *Switzer* v. *Aldrich*, 307 N. Y. 56.) Thus he states — "I knew the truck in question had been sold [to J & R] * * * and therefore I saw no reason to make any report and consequently did not [do so] * * * until I received a summons on October 11, 1954." And again — "We had no responsibility arising from the accident because it wasn't our truck that was involved in the accident, it having been sold * * *. The lawsuit commenced on October 11, 1954 was the first notice to us that there could be any claim resulting from the non-return to us of our dealer's plate."

But over and above the failure of Dorp to give notice is plaintiff's right to maintain this action (at least as to the Young judgment) under section 167 of the Insurance Law. By the provisions of section 143 of the Insurance Law, Dorp's policy must be construed as though it contained the provision of paragraph (d) of subdivision 1 of section 167 as follows: "A provision that failure to give any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim made by the insured or by any other claimant thereunder if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible."

This court considered this statutory provision in *Lauritano* v. *American Fire Ins. Co.* (3 A D 2d 564, affd. 4 N Y 2d 1028) and wrote (p. 568) that "All members of this court are in agreement that the standards by which the notice given by the injured party must be judged differ from those govering notice given by the insured. The statute having granted the injured person an independent right to give notice and to recover thereafter, he is not to be charged vicariously with the insured's delay * * *. The injured person's rights must be judged by the prospects for giving notice that were afforded him, not by those available to the insured. What is reasonably possible for the insured may not be reasonably possible for the person he has injured. The passage of time does not of itself make delay unreasonable. Promptness is relative and measured by circumstance."

It is conceded that defendant had notice of the accident some 105 days after its occurrence by the institution of the Young action against Dorp and the other defendants. Two members of the court are of the opinion that upon the facts presented notice was given to defendant as soon as it was reasonably possible for plaintiff's assignors to do so and that there is no issue of fact to be tried. A majority of the court concludes, however, that a factual issue is presented that requires a trial.

There remains the question as to the standing of plaintiff to prosecute, as assignee, the judgment obtained by Thomas, Eimess and Demarest against Dorp. This issue was not passed upon by Special Term. Defendant concedes that plaintiff has a right to prosecute as assignee of the rights of Central Greyhound under the Young judgment. It contends, however, that no such right exists as to the other judgment for the reason that it was reversed as to the defendant, Central Greyhound; that the only judgment outstanding is against Dorp which is a joint tort-feasor of Central Greyhound. Defendant argues that plaintiff, as successor by merger to Central Greyhound has no statutory right of contribution against Dorp and there is no common-law right of contribution between joint tort-feasors.

Section 211-a of the Civil Practice Act authorizes a joint tort-feasor, who has been compelled to pay more than his share of a judgment recovered jointly against two or more defendants, to obtain a further judgment for contribution against the other joint tort-feasor. Further, it had been held (prior to 1945) that the assignee of a judgment held by an injured person had no right to maintain an action against an insurer under subdivision 1 of section 109 (now § 167) of the Insurance Law on the ground that the statute had been enacted exclusively for the benefit of the injured person. (*Jackson* v. *Citizens Cas. Co.*, 277 N. Y. 385.)

In 1945 as the result of a study by the Law Revision Commission (1945 Report of N. Y. Law Rev. Comm., pp. 177–212) subdivision 7 was added to section 167 of the Insurance Law (L. 1945, ch. 409). This amendment for the first time spelled out in express language what persons might maintain an action against a liability insurer after a judgment was obtained against its insured. Subject to the limitations and conditions therein stated three classes of persons were so authorized. First, any person who has obtained a judgment against the insured, second, any person who has obtained a judgment against the insured to enforce a right of contribution or indemnity and third, any assignee of a judgment obtained under the first two subdivisions subject to the limitation contained in subdivision 2 of section 41 of the Personal Property Law. Thus, in addition to the injured person, three other classes of judgment creditors were authorized to maintain such an action: contribution creditors, indemnity creditors and assignees.

In discussing the proposal to permit such action by assignees the commission wrote (p. 183) that "After having obtained a judgment for damages against the insured, the injured person (or his personal representative) may want to assign his right of recourse against the liability insurer. Section 41 (2) of the

Personal Property Law recognizes the validity of an assignment of a judgment for personal injuries which has become final. No public policy of the state would be violated in recognizing the validity of such an assignment. On the contrary, the basic public policy that property rights, including choses in action, shall be freely assignable, would be furthered.''

In an accompanying study the commission returned to the subject in this language (pp. 198–199): '' The policy of the statute is to discourage assignments of judgments for personal injury claims while they are still contingent and therefore of doubtful value. The same policy would seem to be applicable to the injured person's claim against the liability insurer after judgment against the insured, for although the claim against the insurer is based on a contractual duty, the same public policy applies to it before the judgment against the insured becomes final. However, after the judgment for personal injuries has become final (*i.e.*, is no longer subject to the contingency that it may be vacated or reversed), neither the language nor the policy of section 41 forbids assignment. The same is true of claims for property damage even before final judgment. As to these two types of situations an amendment to section 167, removing the doubts created by the broad language of *Jackson* v. *Citizens Casualty Co.*, [277 N. Y. 385] could recognize assignability without impairing the basic policy of section 41 of the Personal Property Law.''

Thus, the facts in this action present the problems that faced the Legislature in 1945. Doubt then existed as to whether a joint tort-feasor had a right to maintain an action for contribution under section 167. (Cf. *La Gumina* v. *Citizens Cas. Co.*, 180 Misc. 877, affd. 181 Misc. 180.) That right was clearly given by the 1945 amendment and the standing of plaintiff to seek such contribution upon the Young judgment is not disputed. In addition the Legislature in the broadest language authorized action against an insurer by '' any assignee '' of any person who had obtained a judgment for personal injury or property damage subject to the provisions of subdivision 2 of section 41 of the Personal Property Law.

It is difficult to construe this enactment so as to exclude a joint tort-feasor from accepting such an assignment and suing thereon. The action of Thomas, Eimess and Demarest against Dorp had been prosecuted to final conclusion. The judgment as to Dorp has never been vacated or reversed. Moreover, there is suggested no sound ground of public policy that requires that we should read limiting provisions into the broad language of the enactment. In any event '' Courts are not supposed to legislate

under the guise of interpretation, and in the long run it is better to adhere closely to this principle and leave it to the Legislature to correct evils if any exist." (*Bright Homes* v. *Wright,* 8 N Y 2d 157, 162.)

A majority of the court (two members reaching the opposite conclusion) conclude that pursuant to the provisions of section 167 plaintiff has the right to maintain this action as assignee of the judgment in favor of Thomas, Demarest and Eimess against Dorp.

In view of this conclusion it is unnecessary to reach or pass upon plaintiff's contention that it was not a tort-feasor, joint or otherwise of Dorp. At the time of the accident plaintiff and Central Greyhound were separate corporate entities — Central Greyhound, a New York corporation and plaintiff a Delaware corporation. They merged some 17 months after the accident. Under the merger agreement plaintiff assumed Central Greyhound's obligations but the former contends that these obligations arose *ex contractu* and not *ex delicto*. Therefore, it is argued that, as between the two, Central Greyhound is the only tort-feasor and that plaintiff never was and cannot be cast in the role of a joint tort-feasor with Dorp.

The judgment and order should be reversed on the law, with costs to appellant to abide the event and defendant's motion for summary judgment denied.

BREITEL, J. P., RABIN, STEVENS and EAGER, JJ., concur.

Judgment and order unanimously reversed, on the law, with costs to appellant to abide the event, and defendant's motion for summary judgment denied.