FRANCES E. SWITZER, Individually and as Administratrix of the Estate of CHARLES SWITZER, Deceased, Appellant, *v.* LESTER ALDRICH, Defendant, and WARREN STIKER, Respondent.

Argued March 1, 1954; decided May 20, 1954.

*Judson R. Hoover* and *Osco W. Peterson* for appellant. The trial court erred in granting defendant Stiker's motion for dismissal of plaintiff's complaint and for a nonsuit, as to him. (*Reese* v. *Reamore,* 292 N. Y. 292; *Shuba* v. *Greendonner,* 271 N. Y. 189.)

*Asbury H. Harpending* for respondent. The trial court prop. erly ruled that evidence pertaining to the ownership of the truck involved in the accident and the use of the registration plates

thereon should be admitted and on the basis of this evidence properly granted a nonsuit and dismissal of plaintiff's complaint as against defendant Stiker. (*Reese* v. *Reamore,* 292 N. Y. 292; *Rathfelder* v. *Flag,* 257 App. Div. 71, 282 N. Y. 563; *Wyka* v. *L. A. D. Motors Corp.,* 264 App. Div. 890, 289 N. Y. 856; *Le Roy* v. *Tremper,* 267 App. Div. 387, 292 N. Y. 646.)

FROESSEL, J.  Early in the morning of November 24, 1950, on Route 17 between the villages of Addison and Woodhull, in Steuben County, defendant negligently drove a panel truck partially onto the shoulder of the road and struck several men, who had set out on a hunting trip, one of whom was Charles Switzer.  Twelve hours later, Switzer died of injuries resulting from the accident.

Four days previously, on November 20, 1950, defendant Stiker, an automobile dealer, had sold this truck under a contract of conditional sale to defendant Lester Aldrich and Carrie Aldrich, his mother, both of whom signed as *purchasers.* Lester, who was under twenty-one years of age at the time, took possession of the truck on the evening of that same day, at which time dealer's license plates belonging to Stiker were attached thereto.  These plates were still on the truck at the time of the accident.

Switzer's widow instituted suit against both Lester Aldrich and Stiker.  Her individual claim was dismissed without objection.  Her case as administratrix, against Aldrich, who had driven the truck, resulted in a jury verdict in her favor, which was unanimously affirmed by the Appellate Division.  Aldrich has not appealed from the affirmance.  Her case as administratrix, against Stiker, was based on the theory that he was vicariously liable under section 59 of the Vehicle and Traffic Law, as owner of the truck.  Throughout the trial, plaintiff's counsel contended that Stiker could not deny his ownership, and objected to the introduction of evidence showing that Stiker was not the owner.  These objections were uniformly overruled, and, when all sides had rested, on motion made by Stiker's counsel, the Trial Judge dismissed the complaint as against his client on the ground that plaintiff had failed to prove Stiker to be the truck's owner.  The Appellate Division affirmed.

The proof introduced by plaintiff, establishing that the dealer's license number on the truck had been issued to Stiker, constituted prima facie evidence that he was the truck's owner (*Ferris* v. *Sterling,* 214 N. Y. 249, 253). Whether Stiker should have been permitted to rebut this presumption of ownership by proof that established *violations* of the statute and the commissioner's regulations hereinafter referred to, in view of our decision in *Shuba* v. *Greendonner* (271 N. Y. 189), and especially in *Reese* v. *Reamore* (292 N. Y. 292) and *Buono* v. *Stewart Motor Trucks* (292 N. Y. 637), is the precise question presented on this appeal.

Upon the principle that it would be against public policy to permit one to assert his improper act, which was directly in violation of the motor vehicle registration laws, in order to avoid liability as an owner under section 59 of the Vehicle and Traffic Law, we held in *Shuba* v. *Greendonner* (*supra*) that one who has deliberately caused a motor vehicle to be registered in his name as owner will not be permitted to escape liability for injuries caused by that vehicle by proving that he was not in fact its owner. As we noted in that case, with reference to the system of motor vehicle registration in this State (271 N. Y. 189, 193), " The Legislature has been very specific in making rules *for the purpose of facilitating identification of an owner by the police and the public,* fastening responsibility for injuries and requiring evidence of ability to respond in damages to injured persons * * * *Strict regulations* are enacted for the sale of an automobile and the registration thereof by the vendee and for the issuance and *limited use* of dealer's plates." (Emphasis supplied.) One exception to the general pattern of this registration system is a special privilege granted by the Legislature to automobile dealers authorizing them to lend their dealer's plates to purchasers, burdened, however, with certain conditions. Unless a dealer complies with those conditions, he lends his plates without statutory authorization, and, therefore, illegally. Since it is the dealer himself who seeks to gain whatever advantages the privilege may afford him, it does not seem unreasonable to hold him to a strict compliance with the appendant conditions.

This principle was applied by us in *Reese* v. *Reamore* (*supra*) and *Buono* v. *Stewart Motor Trucks* (*supra*), where we held that an automobile dealer who permits a purchaser to use his dealer's license plates, without complying with the safeguards established by statutes and administrative regulations, likewise may not deny his ownership in order to escape liability for an accident which occurred while the car still bore his dealer's plates. In the *Reese* case (*supra*), the dealer who lent his plates had disregarded three of these safeguards: (1) he had failed to see that the purchaser made a timely application for registration; (2) he had delivered the plates to the vendee without *first* mailing the required verified statement to the commissioner; and (3) he failed to report nonreturn of the plates after the expiration of six days (Vehicle and Traffic Law, § 63).

As to the first safeguard mentioned, the statute authorizes the limited use of dealer's number plates for five days, only "if a proper application for registration and number plates for such vehicle" has been made "within twenty-four hours after he [the vendee] has taken possession thereof". Supplementing the statute, regulation 17, issued by the Commissioner of Motor Vehicles pursuant to subdivision 9 of section 62 of the Vehicle and Traffic Law, provides, so far as pertinent here, as follows: "A dealer plate may be loaned to a purchaser for a period not exceeding five days, *provided* the purchaser files an application for registration of the vehicle." (N. Y. Official Compilation of Codes, Rules and Regulations [4th Cum. Supp.], p. 1124; emphasis supplied.) If, therefore, a dealer, before the purchaser has applied for registration, lends his plates for a longer period than twenty-four hours, he does so at his peril and runs a risk that the purchaser will, as here, fail to make timely application. In such event, the loan of the dealer's plates beyond the twenty-four-hour period is illegal, for the dealer has failed to comply with one of the safeguards upon which his special privilege is conditioned.

In the instant case, Stiker permitted Aldrich to retain his plates without inquiring whether Aldrich had applied for registration within twenty-four hours; he never even informed Aldrich that the application was required to be filed within said period. As it developed, Aldrich did not file any application

until four days after the accident and eight days after he took possession of the car, and the one he finally did file was not a "proper application" within the meaning of the statute because it failed to list his mother as a co-owner.

In addition, the simple and explicit language of the second safeguard above mentioned, namely, that "A dealer" "*shall not deliver* to" a vendee any dealer's plates "*without first mailing* to the commissioner a verified statement" as required by the third paragraph of section 63 of the Vehicle and Traffic Law (emphasis supplied), was clearly not complied with in this case. Viewing the vague, equivocal and inconsistent statements of Stiker's salesman in their most favorable light, the prescribed verified statement, similarly defective in failing to name Lester's mother as co-owner, was mailed at least two days late, and definitely not before delivery of the dealer's plates. Indeed, the Commissioner of Motor Vehicles never did receive notice of the true ownership of the motor vehicle.

Thus defendant Stiker failed to comply with two of the safeguards under consideration. That being so, the rule we enunciated in the *Reese* case (*supra,* pp. 296–297) is clearly applicable. There, after stating the general principle which prevents one from denying ownership of a car bearing his license plates, we explained the two circumstances under which the general principle does *not* apply: "Where the dealer complies with the simple and explicit requirements of the statute authorizing the use of his plates by others, or where the plates are used by others without his permission, express or implied, this principle has no application." Neither of these exonerating circumstances is present in this case. We then affirmatively restated the rule which manifestly governs the case at bar (p. 297): "If, however, the dealer permits the use of his plates in deliberate violation of the statute, then * * * he may not deny his ownership which he has falsely evidenced by permitting the unlawful use of his plates by another." From this it follows that since Stiker failed to comply with the "simple and explicit requirements of the statute", and since he did unlawfully permit Aldrich to use his plates, he should not have been permitted at the trial to deny successfully his ownership of the truck.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

Lewis, Ch. J., Conway, Desmond, Dye, Fuld and Van Voorhis, JJ., concur.

Judgments reversed, etc.