SAFECO INSURANCE COMPANY OF AMERICA, a Corpo-
RATION, AND HARLAN DEAN, Plaintiffs and Appellants,
v. NORTHWESTERN MUTUAL INSURANCE COMPANY,
a Corporation, and BEAR PAW SALES AND SERVICE,
INC., a Corporation, Defendants and Respondents.

No. 10432
Submitted January 16, 1963. Decided May 29, 1963.
382 P.2d 174.

156

Hall, Alexander & Kuenning, Edward C. Alexander (argued orally), Great Falls, for appellants.

Smith, Boone & Rimel, Russell E. Smith (argued orally), Missoula, for respondents.

Anderson & Sorenson, Helena, amicus curiae.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is a declaratory judgment action appealed from the district court of Hill County. In this cause Safeco Insurance Company of America, a corporation, whom we will hereafter refer to as Safeco, and Harlan Dean are the plaintiffs, and the Northwestern Mutual Insurance Company, a corporation hereafter referred to as Northwestern, and Bear Paw Sales & Service, Inc., a corporation, hereafter referred to as Bear Paw, were defendants.

The fact situation discloses that on May 9, 1960, Bear Paw was engaged in the new and used car business as a dealer at Havre and had on hand a 1958 Studebaker car which it had acquired on a trade and for which it held the certificate of title. Northwestern had issued to Bear Paw a blanket garage owner's liability insurance policy covering vehicles owned by Bear Paw while used in its business or while being driven with its permission and consent.

Harlan Dean on the same date, May 9, 1960, was the owner

of a 1958 Hillman car on which the certificate of title had been issued to him subject to a mortgage to a Havre bank. The Hillman car was covered by a liability insurance policy issued by Safeco which carried the usual provisions insuring Dean against liability arising out of the use of the Hillman car or any "owned" replacement for it.

Dean had been looking for another car and on the morning of May 9, 1960, he drove the Hillman to Bear Paw's premises and arranged with the sales manager of Bear Paw to try out the Studebaker and show it to his wife. A price of $350 plus trade-in was discussed. Dean left the Hillman and drove away in the Studebaker which he used in his work as a salesman that day. On the following day Dean told the Bear Paw people that he would take the Studebaker and he continued in possession of the car on that day and on the following day, May 11, 1960, Dean was involved in a serious collision. Northwestern refused to accept any liability under its garage owner's liability policy and this action was instituted by Safeco and Dean for a declaratory judgment to have judicially determined which company was primarily responsible for Dean's defense and any liability imposed upon him as a result of the collision.

Depositions were taken of officers of Bear Paw who had knowledge of the transaction and of Harlan Dean and the parties stipulated that the matter be submitted to the court for decision on those depositions, the admissions in the pleadings, the certificate of title to the Studebaker and copies of the two insurance policies. The court thereafter made and entered findings of fact, conclusions of law and a decree in favor of the defendants and this appeal followed.

The court found and concluded, in brief, that there was a completed sale and at the time of the accident Dean was the owner and driving as such and not by permission from Bear Paw; that the Studebaker was not owned by Bear Paw as the word owner is used in the Northwestern policy; that Dean was the owner of the Studebaker as the word owner is used in the

Safeco policy and the Studebaker was a replacement automobile under the policy; and that the Northwestern policy does not protect Dean and the Safeco policy does.

Each of the policies of insurance contain similar "other insurance" clauses to the effect that with respect to a "non-owned" automobile coverage was afforded only as to the existence of liability over any other valid and collectible insurance. The issue between the parties thus becomes very narrow, in that if Dean was the "owner" of the Studebaker on May 11, 1960, the Safeco policy is responsible, as the district court found, but if Bear Paw was the "owner" on that date then the Northwestern policy is responsible up to its limits and beyond which Safeco becomes responsible as the "excess" insurer.

Plaintiffs' specifications of error are directed to the findings of fact and conclusions of law adopted by the court and its refusal to adopt those requested by the plaintiffs, and in entering judgment in favor of the defendants and against the plaintiffs.

In support of their specifications the plaintiffs contend that motor vehicles can only be transferred as to ownership by endorsement of the title as required by the provisions of sub-division (a) of section 53-109, R.C.M.1947; that by sub-division (c) of the same statute the affirmative duty was placed on Bear Paw as a dealer to obtain an application for transfer and registration on the Studebaker certificate of title; that under sub-division (d) of the same statute delivery, passing of title, or the transfer of any interest in the Studebaker could not be valid or effective for any purpose without complying with the specific provisions of the statute; that under the general law of sales there was not a valid change in ownership on May 10, 1960.

Section 53-109, R.C.M.1947, so far as pertinent here, reads as follows:

"(a) Upon a transfer of any title or interest of an owner or owner in or to a motor vehicle registered under the provi-

sions of this act as hereinbefore required, the person or persons whose title or interest is to be transferred shall write their signatures with pen and ink upon the certificate of ownership issued for such vehicle, in the appropriate space provided upon the reverse side of such certificate, and such signature shall be acknowledged before a notary public.

"(b) Within ten (10) days thereafter, the transferee shall forward both the certificate of ownership so endorsed and the certificate of registration, together with the information required under section 53-107, to the registrar, who shall file the same upon receipt thereof and no certificate of ownership and certificate of registration shall be issued by the registrar of motor vehicles until the outstanding certificates are surrendered to that office or their loss established to his reasonable satisfaction.

"(c) The provisions of subdivision (b) of this section, requiring a transferee to forward the certificate of ownership after endorsement and the certificate of registration to the registrar, shall not apply in the event of the transfer of a motor vehicle to a duly licensed automobile dealer intending to resell such vehicle and who operates the same only for demonstration purposes, but every such dealer shall upon transferring such interest deliver such certificate of ownership and certificate of registration with an application for registration executed by the new owner in accordance with the provisions of section 53-107, and the registrar upon receipt of said certificate of ownership, certificate of registration and application for registration, together with the conditional sales contract or other lien, if any, shall issue a new certificate of ownership and certificate of registration together with a statement of any conditional sales contract, mortgage, or other lien as provided in said section 53-107.

"(d) Until said registrar shall have issued a certificate of registration and certificate of ownership and statement as hereinbefore provided, delivery of any motor vehicle shall be deemed

not to have been made and title thereto shall not have passed. and said intended transfer shall be incomplete and not be valid or effective for any purpose."

The depositions disclose that the price agreed upon between Dean and Bear Paw for the Studebaker was $350 and trade-in of the Hillman free of any encumbrance; no arrangements were made as to how the $350 was to be paid. These arrangements were all oral between Dean and officers of Bear Paw.

The certificate of title to the Studebaker was never assigned by Bear Paw to Dean nor was it ever delivered to him, nor was any application for registration of the Studebaker ever executed by Dean, nor were any other papers or documents ever transmitted to the Registrar of Motor Vehicles to transfer title to Dean.

Bear Paw kept records of all cars they had in stock, which was explained: "Generally, of course, if a man trades in a car, we would make out a sales slip on it, and the title would change hands, and the contract, or whatever else would change hands, and these records then all go in the records upstairs. * * * That's where the transaction is completed. It would show the money difference, of course, and the whole transaction." While Bear Paw had a record of the Studebaker and when an automobile is sold they would make a book entry covering the name of the purchaser, what it was sold for and the date of sale, no book entries were made with respect to this car. Nothing was signed, no order was signed nor paper of any kind and Dean still had title to the Hillman in his possession and Bear Paw had title to the Studebaker. Bear Paw had no records on the Hillman. Following Dean's recovery from his injuries either he or his wife took the Hillman car back from the sales lot of Bear Paw and the matter was at an end.

From the foregoing it is very apparent that no attempt was made by either Dean or Bear Paw to comply with the provisions of section 53-109, supra.

As heretofore stated, plaintiff contends that a change of own-

ership cannot be effected orally or in any other manner than through transfer of the certificate of title as required by the statute. Defendant maintains that the statute is a recording statute governing the record title as distinguished from ownership. Defendant further maintains that section 53-133 (f), R.C.M. 1947, defines ownership. This sub-section reads:

"The words and phrases used in this act shall be construed as follows, unless the context may otherwise require:

"f. The term 'owner' shall include any person, firm, association or corporation owning or renting a motor vehicle, or having the exclusive use thereof, under lease or otherwise, and shall also include a contract vendee."

While Chapters 71 and 73 of the 1913 Session Laws covered motor vehicles it was not until the adoption of Chapter 75 of the 1917 Session Laws that Montana provided for the registration and identification of motor vehicles. Under this law, while owners were required to file an application for registration and registration certificates were issued, there existed no requirement that such registration certificate must be transferred upon a sale of the motor vehicle. In fact all that was required was that the vendee notify the registrar of motor vehicles of the transfer, stating the name and business address of the previous owner, if known, the number under which the vehicle is registered and the name, residence and business address of the vendee. In the event the registration certificate or number plates were lost or destroyed the owner of the motor vehicle could again register the vehicle and receive a new number plate and registration certificate and the original registration would then be concelled. Quite clearly this was but a recording statute.

In 1925 the Legislature enacted Chapter 113 which provided for an official certificate of title and provided for its endorsement and delivery to the purchaser at the time of delivery of the vehicle.

In 1933 the Legislature enacted Chapter 159, which provided in section 3(e) as follows:

"Until said Registrar shall have issued said new certificate of registration and certificate of ownership as hereinbefore in Subdivision (d) provided, delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose."

Here for the first time is a specific provision that any intended transfer not in compliance with the statute, is incomplete and invalid for any purpose and while certain minor amendments have been made in subsequent years it still remains substantially the same, and now appears as subdivision (d) of section 53-109, R.C.M.1947, supra.

In Sonnek v. Universal C.I.T. Credit Corp., 140 Mont. 503, 374 P.2d 105, this court stated:

"In the instant case, the buyer upon several occasions, inquired about and demanded the transfer of title to the second car to her. Credit Corporation's assignor, the dealer, did not comply with section 53-109, supra. Subdivision (d) of that section specifically provides that:

" 'Until said registrar shall have issued a certificate of registration and certificate of ownership and statement as hereinbefore provided, delivery of any motor vehicle shall be deemed not to have been made and title thereto shall not have passed and said intended transfer shall be incomplete and not be valid or effective for any purpose.'

"The transactions in question were without consideration since title did not pass to buyer. Under section 13-903, R.C.M. 1947, buyer was entitled to rescind on grounds of fraud and failure of consideration. See Thompson v. Sprague, 107 Cal. App.2d 647, 237 P.2d 275."

Again in Williamson v. Skerritt, 141 Mont. 422, 378 P.2d 215, this court stated:

"The Legislature of the State of Montana enacted sections 53-101 to 53-144, R.C.M. 1947, which deal solely with the registration of motor vehicles, prescribe the duty of the Registrar, and provide for the payment of fees for certain acts of the Registrar. These are the controlling statutes in all cases of motor vehicles in the State of Montana.

"It can thus be seen that it was the plain intent of the legislature in sections 53-101 to 53-144, inclusive, to cover all of the facets appertaining to motor vehicles within the State of Montana."

Our court further stated in the Williamson case, supra, that we are duty bound to construe and judicially determine the provisions of the motor vehicle code as they are written, avoiding the multiple and confusing decisions of our sister states, because none of them contain the exact language present in our statutes.

The above cited decisions do not support the contention of the defendants that the motor vehicle statutes are merely recording statutes.

Defendants lay great stress upon subdivision (d) of section 53-109, denominating it a registration law.

It is true that the motor vehicle code covers the registration of motor vehicles, but this is under sections 53-107, 53-108, 53-114 and 53-122, R.C.M. 1947, and not under section 53-109 which deals with the transfer of ownership of the motor vehicle.

In our two decisions cited heretofore we have referred either to the motor vehicle code or section 53-109 in its entirety. In the Sonnek case, supra, we stated there had been a failure to comply with section 53-109; in the Williamson case, supra, we stated that all facets of our law pertaining to motor vehicles were contained in the motor vehicle code.

While defendants assert great problems will arise if section 53-109 is interpreted to mean what it says, we fail to follow such reasoning. The statutory requirements are quite simple, in that upon a transfer the person transferring writes his sig-

nature with pen and ink on the certificate of ownership and has it acknowledged before a notary public; within ten days transferee shall forward to the registrar both the endorsed certificate of ownership and the certificate of registration with the other information required, which is an application for a new certificate of ownership by the transferee. This latter requirement is not necessary to be done within the ten-day period in the event the transfer is made to a licensed automobile dealer until such dealer makes a transfer but when he does he follows the same procedure.

There is nothing unrealistic, technical or artificial about this simple procedure for the transfer of ownership of a motor vehicle. While defendants contend that even when following the statutory procedure dire consequences could result because of what might occur during the ten-day period, it seems to us rather clear that when the seller has executed the transfer upon the certificate of ownership and delivered it and the motor vehicle the sale is complete and any delay on the part of the registrar in issuing the new certificate of ownership would have no effect. In any regular transaction the new certificate of ownership is required to be issued by the registrar and issues as a matter of course. The transfer then becomes complete and valid and dates back to the time of the transfer between the parties. If the transfer has not been made in compliance with the statute and the registrar by reason thereof does not issue a new certificate of ownership, clearly there was no transfer of ownership in its inception.

As to section 53-133, R.C.M.1947, the statute defining words and phrases in the motor vehicle code, it clearly states what their construction shall be "unless the context may otherwise require." If there exists any conflict, which we do not perceive, in our view the context of section 53-109 requires the interpretation as herein stated.

We must adhere to the tenor of our former interpretations that the provisions of the motor vehicle code provide the

exclusive method of accomplishing a valid sale and transfer of a motor vehicle.

No attempt having been made by either Dean or Bear Paw to comply with section 53-109, supra, we must hold there was never a completed sale and the judgment must be reversed.

The cause is remanded to the district court with instructions to vacate and set aside its findings, conclusions and judgment and adopt findings and conclusions in accordance with our views herein expressed and to cause to be entered a judgment in accordance therewith in favor of the plaintiffs.

It is so ordered.

MR. JUSTICES CASTLES, JOHN C. HARRISON and DOYLE, concur.