**Laurence COLBRESE, Jr., Plaintiff,**

**v.**

**NATIONAL FARMERS UNION PROP-ERTY & CASUALTY COMPANY, Defendant.**

**Civ. No. 438.**

United States District Court
D. Montana,
Billings Division.
April 1, 1964.

Lamey, Crowley, Kilbourne, Haughey & Hanson, Billings, Mont., for plaintiff.

Wiggenhorn, Hutton, Schiltz & Sheehy, Billings, Mont., for defendant.

JAMESON, District Judge.

Plaintiff's minor son died from injuries sustained on December 3, 1960, when he was riding as a passenger in a 1949 Ford sedan operated by Jerry Kinney, minor son of Albert Kinney. Plaintiff has brought this action to recover on a judgment entered against Jerry Kinney as a result of that death.

On December 3, 1960, there were in effect two liability insurance policies issued by defendant to Albert Kinney and covering a 1951 Dodge automobile and a 1954 International one and one-half ton truck respectively. Suit was insti-

tuted by Colbrese against Jerry Kinney. Albert Kinney made written demand upon defendant to assume the defense of that action. Defendant declined and denied coverage.

Jerry Kinney, through his guardian ad litem, filed an offer to allow judgment to be taken against him for $18,850.00. This offer was accepted by Laurence Colbrese, Jr., the plaintiff in both that action and this present action. Judgment was entered for that amount. Jerry Kinney, through his guardian ad litem, assigned to plaintiff his alleged right to indemnification from National Farmers Union Property & Casualty Company. That assignment is the basis for the present suit.

Plaintiff contends that the defendant was obliged to defend the action instituted against Jerry Kinney under the non-ownership provisions of the two insurance policies issued to Albert Kinney. Defendant has moved for summary judgment on the ground that the 1949 Ford sedan was not, on December 3, 1960, a "non-owned vehicle" of Albert Kinney, so as to entitle Albert Kinney or any of his relatives, including Jerry Kinney, to coverage under either of the policies issued by defendant to Albert Kinney.

The Ford automobile was acquired by Albert Kinney when he purchased a farm and the machinery and equipment thereon from a Mrs. Robert McCormick on September 2, 1958. The record owner of the farm and the Ford was C. W. Ehart, who died prior to September 2, 1958, leaving as his sole heir, Robert McCormick. Upon Ehart's death, McCormick became entitled to all of Ehart's right, title and interest in the Ford. McCormick died, leaving as his sole heir, Mrs. Robert McCormick, who thereupon became entitled to McCormick's right, title and interest in the Ford.

Prior to September 2, 1958, Mrs. McCormick agreed to sell all of her right, title and interest in the Ford to Albert Kinney for a consideration, which has been fully paid. Since September 2, 1958, Kinney has been in possession of the Ford and has claimed to be its owner.

Albert Kinney received the registration certificate from Mrs. McCormick and paid for Montana licenses for the automobile for the years 1959 and 1960.

The title certificate issued by the Registrar of Motor Vehicles of the State of Montana covering the Ford has not been delivered to Kinney by Mrs. McCormick, or anyone representing her, or by the Registrar of Motor Vehicles. On four or five occasions between September 2, 1958, and December 3, 1960, Kinney requested the attorney for Mrs. McCormick and the Ehart estate to furnish to him the title certificate (certificate of ownership) issued by the Registrar of Motor Vehicles relating to the Ford.

Each of the insurance policies required the defendant to pay on behalf of the insured all sums which the insured should become legally obligated to pay as damages because of:

"A. Bodily injury, sickness or disease, including death resulting therefrom, hereinafter called bodily injury, sustained by any person * * *

"Arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile * * *."

Other policy provisions upon which the respective parties rely read as follows:

' "The following are insureds under (liability):

"(a) With respect to the owned automobile,

"(1) the named insured and any resident of the same household.

"(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;

"(b) With respect to a non-owned automobile,

"(1) the named insured, '

"(2) any relative, but only with respect to a private passenger automobile or trailer not regularly

furnished for the use of such relative; * * *

" 'Non-owned automobile' means an automobile or trailer not owned by the named insured or any relative, other than a temporary substitute automobile;"

The question presented by the motion for summary judgment is whether the 1949 Ford automobile is a "non-owned automobile" by reason of the fact that no certificate of ownership was ever issued to Kinney in compliance with the provisions of section 53-109, R.C.M. 1947.

Subsection (a) of section 53-109 provides:

"(a) Upon a transfer of any title or interest of an owner or owner in or to a motor vehicle registered under the provisions of this act as hereinbefore required, the person or persons whose title or interest is to be transferred shall write their signatures with pen and ink upon the certificate of ownership issued for such vehicle, in the appropriate space provided upon the reverse side of such certificate, and such signature shall be acknowledged before a notary public."

Subsection (b) requires the transferee to forward the endorsed certificate of ownership and the certificate of registration to the registrar of motor vehicles within ten days for the issuance of a new certificate.

Subsection (d) provides:

"(d) Until said registrar shall have issued a certificate of registration and certificate of ownership and statement as hereinbefore provided, delivery of any motor vehicle shall be deemed not to have been made and title thereto shall not have passed and said intended transfer shall be incomplete and not be valid or effective for any purpose."

Subsection (e) prescribes the procedure to be followed by an executor, administrator, and others acting in a representative capacity, "(i)n the event of a transfer by operation of law of any title or interest of an owner of the legal title or owner in and to a motor vehicle registered under the provisions of this act, as upon inheritance, devise or bequest * * * ".1

The provisions of Section 53-109 were last construed by the Montana Supreme Court in Safeco Insurance Co. v. Northwestern Mutual Ins. Co., 1963, Mont., 382 P.2d 174. On May 9, 1960, Harlan Dean, the owner of a Hillman automobile drove to Bearpaw Motor Company and negotiated for the trade-in of the Hillman on the purchase of a Studebaker. He left the Hillman and drove away in the Studebaker, which he used in his work that day. The following day he told Bearpaw he would take the Studebaker. He continued in the possession of the Studebaker and the following day, May 11, it was involved in an accident. Northwestern had issued a blanket garage owners liability policy to Bearpaw. Safeco had issued a liability policy to Dean covering the Hillman or any "owned" replacement.

The Safeco case was a declaratory judgment action to determine which insurance company was primarily responsible for Dean's defense and any liability imposed upon him for the accident. The trial court held that Dean was the "owner" of the Studebaker, as used in the Safeco policy and that the Studebaker was a replacement automobile under that policy. The Supreme Court reversed, holding that since neither party had attempted to comply with the provisions of section 53-109, there was never a completed sale, and the automobile dealer was still the owner and its policy covered the accident.

Admittedly the factual situation here is distinguishable in many respects.

---

1. In view of this statutory provision, there is no reason why the title certificate could not have been endorsed and delivered to Kinney prior to completion of the probate of the Ehart and McCormick estates.

Accordingly, it becomes important to determine the basis of the court's decision in the Safeco case. In this connection I have examined the briefs of all parties, including one filed by amicus curiae, in the Safeco case.

In Safeco, the court discussed at some length the history behind section 53–109, rejecting the contention that the present statute was intended as a recording statute only. The court also rejected the respondent's contention that section 53–109(d) was intended as a registration law, noting that it "deals with the transfer of ownership of the motor vehicle". 382 P.2d at 178. Compliance with the specific provisions of section 53–109 was held to be a prerequisite to transfer of title. The court said in pertinent part:

"While defendants assert great problems will arise if section 53–109 is interpreted to mean what it says, we fail to follow such reasoning. * * *2

"There is nothing unrealistic, technical or artificial about this simple procedure for the transfer of ownership of a motor vehicle. * * *" 382 P.2d at 178.

The court concluded with this language: "We must adhere to the tenor of our former interpretations that the provisions of the motor vehicle code provide the exclusive method of accomplishing a valid sale and transfer of a motor vehicle." 382 P.2d at 179.3

Defendant argues that the opinion of Judge Pray in Fireman's Ins. Co. of Newark, N. J. v. Show, 1953, D. Mont. 110 F.Supp. 523, is "most persuasive" in determining the effect of section 53–109(d). In their pretrial memorandum counsel recognized that Safeco Insurance Co. of America v. Northwestern Mutual Ins. Co. is in "apparent conflict with Judge Pray's decision"; but in their brief in support of defendant's motion for summary judgment, it is contended that the conflict is only on the face of the decisions and that "an examination of the rationale behind the decisions does not really involve any conflict".

 Respondent in Safeco likewise relied upon Judge Pray's opinion,4 and it was discussed in the briefs of both counsel in that case. Yet no reference was made to this case in the opinion of the Montana court in Safeco. In the absence of a subsequent construction of the statute by the Montana Supreme Court, I might properly follow Judge Pray's decision. I am of course now bound by the construction of the Montana Court in Safeco, unless it is determined that Safeco does not govern the situation here.5

It is true, as defendant argues, that this case is factually distinguishable from Safeco. In one critical respect, however, they are the same. In neither case had the transferor written "his signature with pen and ink on the cer-

2. A substantial part of the briefs was devoted to a discussion of various problems which might arise if section 53–109 (d) were held to govern ownership, the brief of respondent reading in part:
"It should be remembered here that if 53–109d is held to govern ownership, that it will govern it whole hog and that there is no place short of the actual issuance of the registration certificate at which the court can say that ownership has changed. Since the results which would follow such a holding are so utterly absurd and will result in such manifest injustices the court should not so hold unless compelled by the statute to do so. There is no such statutory compulsion."

3. See Sonnek v. Universal C.I.T. Credit Corporation, 1962, 140 Mont. 503, 374

P.2d 105, and Williamson v. Skerritt, 1963, 141 Mont. 422, 378 P.2d 215.

4. In fact, every case cited in defendant's brief was also cited in respondent's brief in Safeco.

5. It is well settled that this court is bound by the decisions of the Supreme Court of Montana construing statutes of this state. See, e. g., the following cases: United States v. Burnison, 1950, 339 U.S. 87, 89. 70 S.Ct. 503, 94 L.Ed. 675; Albertson v. Millard, 1953, 345 U.S. 242, 244, 73 S.Ct. 600, 97 L.Ed. 983; Chavez v. Dickson, 9 Cir. 1960, 280 F.2d 727, 731, ftnt. 3, Chavez v. People of State of Cal., cert. denied, 358 U.S. 946, 79 S.Ct. 356, 3 L.Ed.2d 353; Van Schaick v. Parsons, D.Mont.1935, 11 F.Supp. 654, 658.

tificate of ownership and had it acknowledged before a notary public", or delivered the certificate, endorsed or otherwise, to the transferee.[6] Defendant argues further that until the buyer has rescinded the contract, "failure to comply with the registration requirements of the statute makes the contract not void ab initio, but voidable".

■■ As I read Safeco, the court says that, "In any regular transaction the new certificate of ownership is required to be issued by the registrar and issues as a matter of course." In that event, the transfer "becomes complete and valid and dates back to the time of transfer between the parties".[7] If, however, *"the transfer has not been made in compliance with the statute* and the registrar by reason thereof does not issue a new certificate of ownership, there was no transfer of ownership in its inception". (Emphasis supplied.) Here, as in Safeco, the transfer has not been made by the parties in compliance with the statute. Under the holding of the Montana Supreme Court, "there was no transfer of ownership in its inception" and there "was never a completed sale".

The memorandum of the defendant filed in advance of pretrial conference contains the following:

"* * * to people who know insurance, the Montana Supreme Court's decision in Safeco Insurance Company would be clearly wrong. The Court applied the provisions of 53–109(d) without any regard to the fact that as between the parties there was a contract in the policy of insurance as to what an 'owned automobile' was. The same provision appears in the policy in the case at bar * * * We can predict with a fair degree of certainty at some future date the Supreme Court will have to reverse itself and hold that an insurance policy is not applicable to a newly acquired automobile before the certificate of title is issued, which would be contrary to the Safeco Insurance holding here."

It is difficult to understand why defendant has not sought a declaratory judgment from the Supreme Court of Montana, as was done in Safeco. Defendant did institute a declaratory judgment action in this court, which was dismissed by reason of the fact that the same questions were raised in the instant case. It is possible, as counsel for defendant have suggested, that as applied to a different factual situation the Supreme Court of Montana would modify its interpretation of § 53–109(d). I do not feel that I can do so.

In a very recent decision, United Services Life Ins. Co. v. Delaney, 5 Cir. 1964, 328 F.2d 483, the court, in a diversity case involving the construction of insurance contracts under Texas law, stayed a determination "until the courts of the State of Texas shall have declared the law of the State of Texas which is applicable to and controlling in the disposition of these appeals". The court therefelt that the Texas decisions left "the meaning of the questioned clauses obscure" and stated that, "Without further enlightenment any judgment we might pronounce would be 'a forecast rather than a determination'." [8]

---

6. It might well be that a different case would be presented had the transferor signed and delivered the certificate of ownership to the transferee, and the delay in issuance in the certificate of ownership was due either to the fault of the transferee or the registrar. It is of course unnecessary to pass upon this question, and I do not express any opinion with respect thereto.

7. Preceding this conclusion, the court said: "While defendants contend that even when following the statutory procedure dire

consequences could result because of what might occur during the ten-day period, it seems to us rather clear that when the seller has executed the transfer upon the certificate of ownership and delivered it and the motor vehicle the sale is complete and any delay on the part of the registrar in issuing the new certificate of ownership would have no effect." (382. P.2d at 178.)

8. The majority relied upon Railroad Commission v. Pullman Company, 1941, 312. U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971,.

Here in effect counsel are asking this court to "forecast" a modification of the interpretation of a Montana Statute and comparable insurance policy made by the Montana Supreme Court in Safeco. Under my interpretation of what the Montana Supreme Court held in Safeco, the abstention doctrine fortifies my conclusion that defendant's motion for summary judgment must be denied.

and Louisiana Power & Light Co. v. City of Thibodaux, 1959, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058, where the Supreme Court said that it has "increasingly recognized the wisdom of staying actions in the federal courts pending the determination by the state court of decisive issues of state law". The minority felt that Meredith v. City of Winter Haven, 1943, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9, was more nearly in point.