The **PHOENIX INSURANCE COMPANY,**
a corporation, Plaintiff,

v.

**Susan NEWELL, Administratrix of the Estate of Edward J. Byer, Deceased, et al., Defendants.**

**Civ. No. 868.**

United States District Court,
D. Montana,
Billings Division.
June 25, 1971.

Bruce R. Toole and Stephen H. Foster, Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Mont., for plaintiff.

Gene Huntley, Baker, Mont., for defendants Susan Newell, Admx., Edgar Boucher and John W. Trudo.

Horton B. Koessler, Hibbs, Sweeney & Colberg, Billings, Mont., for defendant Joe Steffes, Jr.

## MEMORANDUM OPINION AND ORDER

BATTIN, District Judge.

Plaintiff, Phoenix Insurance Company, seeks a declaratory judgment against Erwin Heberle Ford, Susan Newell, Administratrix of the Estate of Edward J. Byer, deceased, and Edgar Boucher, John W. Trudo, and Joe Steffes, Jr.

The parties agreed upon a statement of facts for submission to the court on plaintiff's motion for summary judgment, as follows: Phoenix was the insurer of Erwin Heberle Ford, a partnership engaged in the business of selling new and used automobiles in Baker, Montana. On Saturday, May 4, 1968, Edward J. Byer purchased a 1956 Chevrolet automobile from Erwin Heberle Ford. He paid cash for the vehicle. On the date of the purchase Byer executed the application for a new certificate of title on the old certificate of title, then in the possession of Erwin Heberle Ford. At the same time, Erwin Heberle Ford executed the assignment on the certificate of title, naming Byer as the assignee. The signature of Erwin Heberle Ford, by Erwin Heberle, a partner, was notarized later that same day. Byer took possession of the vehicle on May 4, 1968, after paying the purchase price in full, executing the required documents and purchasing three dollars worth of gasoline.

Byer did not take the certificate of title, which was properly executed, but instead left it with Erwin Heberle. Byer asked Heberle to get license plates for the vehicle on Monday, May 6, 1968, the next day during which the County Treasurer's office, Fallon County, would be open for business. Heberle agreed to do this and accepted twenty dollars from Byer to pay for the gasoline and the license plates. Arrangements were made for a third party to deliver these license plates to Byer on Monday. Erwin Heberle then placed dealer plates on the vehicle so that Byer might drive it over the weekend.

Byer took possession of the vehicle in question and left Erwin Heberle Ford with a copy of the sales slip for the vehicle and a copy of the sales slip for the gasoline. At approximately 6:55 o'clock p. m. on May 4, 1968, Byer was killed in a collision with a vehicle, driven by defendant Joe Steffes, Jr., in which defendants Edgar Boucher and John W. Trudo were passengers. The wrecked Byer vehicle was towed back to Erwin Heberle Ford.

On May 6, 1968, Heberle went to the County Treasurer at the Fallon County Courthouse and delivered to him the certificate of title on the vehicle purchased by Byer, together with the attached assignment and application, all duly executed. At that time Heberle obtained license plates on behalf of the deceased Byer. The County Treasurer sent the certificate of title with the assignment and application for a new certificate of title to the Registrar of Motor Vehicles of the State of Montana. The documents were received in Deer Lodge on May 10, 1968, and a new certificate of title was issued in the name of Edward J. Byer on June 27, 1968.

After receiving the license plates, Heberle replaced the dealer plates on the

Byer vehicle with the plates which he had received from the County Treasurer.

Subsequently, defendants Trudo and Boucher each commenced an action against defendants Susan Newell and Joe Steffes, Jr., for injuries suffered in the collision of the Byer vehicle and the Steffes vehicle. Through her attorney, Newell demanded of Erwin Heberle that he arrange with his insurance company to defend her. Plaintiff Phoenix retained counsel to defend Newell in both actions, but served on Newell a letter reserving to itself the right to deny coverage of Byer and his personal representative, and stating that such coverage was denied.

Plaintiff asks the court in its motion for summary judgment to determine whether it was, through its policy issued to Erwin Heberle Ford, an insurer of Edward J. Byer; whether it had a duty to defend the action brought by defendants Trudo and Boucher and any action which might be brought by defendant Joe Steffes, Jr., and whether it had a duty to indemnify defendant Newell as personal representative of deceased Byer, in the event that a judgment should be rendered against her in any of the above-described actions. Finally, plaintiff asks the court to determine the extent of its liability, in the event that it is found liable to indemnify Newell.

## I.

The answers to the issues raised by plaintiff depend upon whether legal title to the Byer vehicle had passed to Byer or remained in Erwin Heberle Ford.

This policy issued by Phoenix required it to pay all sums which the insured became legally obligated to pay as damages because of bodily injury or property damage, to which the insurance contract applied and which arose out of the garage operations, including only the automobile hazards, for which insurance was offered under the policy declarations. The policy limited the items insured under the automobile hazard to damages arising out of:

"(1) the ownership, maintenance, or use * * * of any automobile for the purpose of garage operations, and

"(2) the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in garage operations, and

"(3) the ownership, maintenance or use of any automobile owned by the named insured while furnished for the use of any person."

Under definitions of persons insured, the policy specifically excludes "any person or organization, other than the named insured, with respect to any automobile (a) owned by such person or organization or by a member (other than the named insured) of the same household, or (b) possession of which has been transferred to another by the named insured pursuant to an agreement of sale."

It is clear from the contract which Phoenix made with Erwin Heberle Ford, that it did not insure any automobile which had been sold and possession of which had been taken by the transferee. Therefore, if there was in fact a sale of the vehicle in legal contemplation and possession had passed, the Phoenix policy is not applicable to the Byer vehicle.

The Montana Supreme Court has ruled that in order for an attempted sale of a vehicle to pass title within legal contemplation, the statutory requirements of Section 53–109, Revised Codes of Montana, 1947, must be met. Irion v. Glens Falls Insurance Co., 154 Mont. 156, 461 P.2d 199 (1969); Ostermiller v. Parker, 152 Mont. 337, 451 P.2d 515 (1968); Safeco Insurance Co. v. Northwestern Mutual Insurance Co., 142 Mont. 155, 382 P.2d 174 (1963). The United States District Court in Montana has also held this to be the rule. Glens Falls Insurance Co. v. Irion, 323 F.Supp. 1164 (D.Mont.1970); Colbrese v. National

Farmers Union Property and Casualty Co., 227 F.Supp. 978 (D.Mont.1964), overruled, 368 F.2d 405 (1966) [1].

Section 53–109(c) requires a dealer who transfers a vehicle to

"deliver such certificate of ownership and certificate of registration with an application for registration executed by the new owner in accordance with the provisions of section 53–107, and the registrar upon receipt of said certificate of ownership, certificate of registration and application for registration, * * * shall issue a new certificate of ownership and certificate of registration * * * as provided in said section 53–107."

Section 53–109(d) then provides that until the Registrar has issued these documents,

"delivery of any motor vehicle shall be deemed not to have been made and title thereto shall not have passed and said intended transfer shall be incomplete and not be valid or effective for any purpose."

The Montana Court construing section 53–109(c) in *Irion* held that the dealer, not the transferee, was responsible to see to timely and proper registration, and that if he failed to do so, section 53–109(d) made him remain the owner of the vehicle. The Court went on to point out that paragraph (d) applied to paragraphs (a), (b) and (c) insofar as a party to the transfer did not follow the law. *Irion, supra,* 154 Mont. at 166–168, 461 P.2d 199.

In *Safeco,* the Montana Court ruled that failure of the dealer-transferor to execute the assignment on the certificate of title, failure of the transferee to apply for registration, and failure of the transferor to deliver the proper documents to either the transferee or the Registrar, was a failure to comply with section 53–109. As a result of these failures there was found to have been no completed sale and the dealer remained the owner of the vehicle.

Judge Jameson, relying on *Safeco,* held in *Colbrese* that failure to complete a transfer in accordance with section 53–109 meant that no title passed from the transferor to the transferee. In that case, the transferee obtained the registration and paid for and obtained license plates for the vehicle for two years. However, the transferor, who was not a dealer, failed to deliver to him the certificate of title and a new certificate was never obtained in the transferee's name. Because the transferor had not, as required by section 53–109(a) and (b), signed the certificate of title, had not had such signature notarized, and had not delivered it to the transferee, there was no sale in legal contemplation and title remained in the transferor.

In *Ostermiller,* the Montana Court, reaffirming the *Safeco* decision, ruled that because the dealer retained the certificate of title, registration, lien, and release of lien until the vehicle was paid for in full, and because the transferee upon receipt of these papers failed to submit them to the Registrar in order to obtain a new certificate of title, the transfer was incomplete and the dealer-transferor remained the legal owner of the vehicle.

The Montana Court reaffirmed both the *Safeco* and *Ostermiller* decisions in *Irion,* and also approved Judge Jameson's decision in *Colbrese,* as a correct statement of Montana law. In that case the dealer, Plaza, took a car from one Shelton in trade. Shelton, as required by section 53–109(b), executed the assignment of the vehicle on the certificate of title. Plaza then transferred the vehicle to one Ulstad, in partial payment of its account with him. Some time later, Ulstad transferred the vehicle to Washington. In neither of the last two transfers was the certificate of title delivered to the transferee. Neither Plaza, Ul-

1. Although Judge Jameson's decision was overruled by the Circuit Court of Appeals, the Montana Supreme Court held that he had correctly interpreted the Montana law. *Irion, supra,* 154 Mont. at 167–168, 461 P.2d 199.

stad nor Washington made any attempt to have a new certificate of title issued. The failure of both Plaza and Ulstad to execute the assignment, to have it notarized and to forward it to the Registrar with the application of the transferee for a new certificate, as required by 53–109(c), negated the sale under 53–109(d) and placed legal ownership in Plaza.

Construing section 53–109(c), the court stated that the section

> "contemplates that when an automobile dealer purchases a used vehicle previously registered in Montana, he shall hold the certificate of title, and when he resells the car he, the dealer, shall have the purchaser sign an application for a new certificate of title, and that he, the dealer, shall forward the old certificate containing this application to the registrar of motor vehicles, * * *." Irion, supra, 154 Mont. at 162, 461 P.2d 199 at 203.

When these cases are considered in light of the facts in the case at bar, it is clear that the dealer-transferor, Erwin Heberle Ford, met the requirements of section 53–109(c) and that section 53–109(d) did not prevent the transfer from being effective. In this case, the transferor executed the assignment on the certificate of title, this signature was notarized, and the transferee, Byer, executed the application for a new certificate of title on the existing certificate. All of the items were completed on a Saturday, when the County Treasurer's office was closed. The transferor could do no more.

Then on Monday following the sale, the dealer-transferor, following the request of the transferee, delivered the certificate of title, containing the notarized assignment and the application of the transferee, to the Treasurer for submission to the Registrar. Under the rule set forth in *Irion*, the dealer-transferor had fully complied with the requirements of section 53–109(c).

The documents were then transmitted to the Registrar by the Treasurer, and a new certificate of title in the name of the transferee, Byer, was issued. The legal implication of the issuance of such a certificate was stated by the Montana Court in *Safeco*, and reaffirmed in *Ostermiller* and *Irion*:

> "In any regular transaction the new certificate of ownership is required to be issued by the registrar and issues as a matter of course. The transfer then becomes complete and valid and dates back to the time of the transfer between the parties." *Safeco, supra,* 142 Mont. at 164, 382 P.2d at 179.

It is readily seen from the rules set down by the Montana Court, and followed by the United States District Court in Montana, that contrary to the defendants' argument, the retention of the documents by the dealer-transferor, Erwin Heberle Ford, and his submission of them to the Registrar was in accord with section 53–109(c) and the transfer was complete and valid as of May 4, 1968. Therefore, because the transferee, Byer, and not the dealer-transferor, Erwin Heberle Ford, was the owner of the vehicle in question, the policy of Phoenix, insuring Erwin Heberle Ford is not applicable.

Defendants also argue that because the transferor placed his dealer plates on the vehicle, in contravention of section 53–118, R.C.M., 1947, so that Byer could drive the vehicle during the weekend, both the transferor and its insurer are estopped from denying ownership of the vehicle at the time of the accident. In support of this proposition, defendants cite Switzer v. Aldrich, 307 N.Y. 56, 120 N.E.2d 159 (1954); Kirkwood v. Campbell, 307 N.Y. 854, 122 N.E.2d 744 (1954); and Eggerding v. Bicknell, 20 N.J. 106, 118 A.2d 820 (1955).

While it is true that New York has held a dealer liable for damages caused by a vehicle bearing its dealer plates and driven by a transferee of the dealer, the existing New York authority has not applied this rule of estoppel to the insur-

er of the dealer. In *Aldrich*, the New York Court of Appeals found that the dealer was the owner of the vehicle which had been transferred under a conditional sales contract and which continued to bear the dealer plates. In an action against the dealer's insurer, Switzer v. Merchants Mutual Casualty Co., 2 N.Y.2d 575, 161 N.Y.S.2d 867, 141 N.E.2d 904 (1957), the Court of Appeals found the insurer liable. However, in another case decided that same day, the court held that the insurance carrier was not estopped from denying that the transferor owned the vehicle, although the vehicle carried the transferor's license plates after the transfer had taken place. Acknowledging that the non-dealer-transferor would be estopped from denying liability under the rule in *Aldrich*, the court went on to find that this rule applied only to a suit in tort and did not apply to a suit in contract against the insurer of the transferor. While public policy required that one, who made possible the commission of a tort by another, not be insulated from liability, there was no public policy requiring the extension of the estoppel doctrine to a contractual issue. The court added that in *Merchants Mutual Casualty Company*, decided that day, coverage was extended to the insurer, not on an estoppel theory, but because of the broad terms of the policy between the transferor and his insurer. Phoenix Insurance Co. v. Guthiel, 2 N.Y.2d 584, 161 N.Y.S.2d 874, 141 N.E.2d 909 (1957).

The ruling in *Guthiel* was upheld in Mason v. Allstate Insurance Company, 12 A.D.2d 138, 209 N.Y.S.2d 104 (1960), which distinguished *Merchants Mutual Casualty Co.* on the basis of the language in the insurance policy involved.

In Rudes v. Hartford Accident and Indemnity Co., 32 A.D.2d 575, 299 N.Y. S.2d 86 (1969), the New York Intermediate Court held that permission of a dealer granted to a transferee to use the dealer plates did not make the transferee an insured under the policy of the transferor. The policy in question in that case provided that " 'insured' would not include any person or organization other than the named insured with respect to any automobile * * * possession of which has been transferred to another by the named insured pursuant to an agreement of sale." *Rudes, supra*, at 87. Thus, although the dealer was estopped from denying ownership at the time of the accident, the estoppel theory could not be extended to the dealer's insurer.

The New York precedent, therefore, does not support the application of the estoppel theory advanced by defendants in a case involving an insurance policy such as the one in the case at bar.

In the New Jersey case cited by defendant, Eggerding v. Bicknell, 20 N.J. 106, 118 A.2d 820 (1955), the New Jersey Supreme Court held that the estoppel theory applied to the insurer as well as the transferor-insured. In that case, the court found broad language covering not only the named insured but also

" 'any person while using an automobile covered by this policy and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission.' " *Eggerding, supra*, at 823–824.

In addition to this policy language, the transfer was incomplete and the use of the dealership plates was found to be incidental to this incompleteness. Therefore, the case is distinguishable on its facts from the case at bar and is not applicable.

## II.

Because the insurance policy of plaintiff was not applicable to the vehicle owned and operated by Byer, the issue raised by the complaint as to the extent of coverage under the policy is moot and no opinion is rendered on that issue.

It is therefore ordered and adjudged that plaintiff's motion for summary judgment be granted. This opinion and order constitutes the findings of facts and conclusions of law by the court.