**Theodore L. GRAHAM, Appellant,**

**v.**

**The NORTH RIVER INSURANCE COMPANY, Appellee.**

**No. 1945.**

Supreme Court of Alaska.

March 20, 1975.

---

Douglas B. Baily, Matthews, Dunn & Baily, Anchorage, for appellant.

Keith E. Brown, Hagans, Smith & Brown, Anchorage, for amicus curiae Harbor Ins. Co.

Robert L. Eastaugh, George N. Hayes, Delaney, Wiles, Moore & Hayes and Reitman, Inc., Anchorage, for amicus curiae United States Fidelity & Guaranty Co.

Burton C. Biss, Wasilla, for appellee.

Before STEWART, MOODY, CARLSON, BURKE and BUCKALEW, Judges.

STEWART, Judge.

Theodore Graham and James Black were operating motor vehicles involved in a collision on August 22, 1971. Graham, who is the appellant here, brought action against Black and against North River Insurance Company (hereinafter North River), the

present appellee. The claim against Black was for negligence in causing the collision and against North River on the assertion that Black was insured at the time of the collision under a policy issued by North River.

The underlying facts are not in dispute. A man named Spence on August 13, 1971 traded in his used Cadillac to Alaska Sales and Service (hereinafter Alaska Sales). At the time of the trade-in, Spence signed off the title and delivered the title and registration to Alaska Sales. The documents were placed by Alaska Sales' title clerk in the files until the vehicle could be resold. The following day James Black bought the Cadillac from Alaska Sales, paying $20.00 as a down payment to bind the agreement on a total purchase price of $705.00. He did not take possession of the Cadillac until August 19 when he paid the remaining balance on the purchase price. When Black took possession, he signed applications for title and registration. The new applications were transmitted to Alaska Sales' title clerk who received them the following day, Friday, August 20. The title clerk promptly completed the documents in order to transfer them to the Alaska Department of Revenue (hereinafter Department). A weekend intervened, but it appears the documents were hand carried to the Department on Monday morning, August 23. A new title and certificate of registration were issued in Black's name on the same day. However, on the previous day, August 22, Black, while driving the Cadillac, was involved in the collision with Graham.

In his motion for summary judgment, Graham contended that since the Cadillac was not registered in Black's name until the day following the collision, the provisions of AS 28.10.370 [1] require that the transaction be deemed of no effect until August 23, and that, therefore, Alaska Sales owned the Cadillac at the time of the collision. Since North River had insured Alaska Sales under a blanket policy, Graham alleged that Black must be considered an additional insured within the terms of North River's policy. This argument was rejected by the trial judge, who granted summary judgment for North River. The court reasoned that AS 28.10.370 established at most a rebuttable presumption that Alaska Sales was the owner of the Cadillac at the time of collision. Since the undisputed evidence established that Black had taken possession and had paid the full purchase price for the Cadillac, the statutory presumption was overcome. Therefore, Black was the actual owner of the Cadillac and not a permissive user under the terms of North River's insurance policy.

Graham succeeded at trial in establishing Black's liability for the accident. However, Graham was able to recover from Black only $15,000.00 of the $125,000.00 damages awarded. Graham now appeals to seek reversal of the lower court's ruling on summary judgment for North River, hoping to satisfy the balance of his judgment from North River's policy.

Resolution of this case requires an examination of the Alaska Motor Vehicle Act (hereinafter Act). Under the statutory scheme, whenever the owner of a registered vehicle transfers or assigns his title or interest, the registration on the vehicle expires.[2] The transferor is required to endorse an assignment and warranty upon the outstanding certificate of title and deliver the certificates of title and registration to the transferee. Before operating or permitting the operation of the vehicle on any highway, the transferee is required to present the certificates of registration and title, properly endorsed, to the Depart-

---

1. AS 28.10.370 provides in pertinent part:
   Until the department issues a new certificate of registration and certificate of ownership, delivery of a vehicle required to be registered under this chapter shall be deemed not to have been made and title shall be deemed not to have passed, and the intended transfer shall be deemed incomplete and not valid or effective for any purpose.

2. AS 28.10.350(a).

ment within 20 days of the transfer of ownership.[3] The transferee, by forwarding the appropriate certificate to the Department, accomplishes a transfer of title upon the issuance by the Department of new certificates of registration and title.[4] Until the commissioner of the Department issues new certificates of registration and title, delivery of any vehicle required to be registered under the Act is deemed not to have been made and the title to the automobile is deemed not to have passed.[5]

Originally, the Act did not provide an avenue by which a seller might accomplish a change of title and registration upon transfer. However, the legislature in 1968 amended the Act to permit a transferor to effectuate a valid transfer upon giving notice to the Department of the transfer within ten days following the transactions.[6] Under this amendment, a transfer of ownership may be accomplished even though the Department has not issued new certificates of title and registration pursuant to AS 28.10.370.

Sales or transfers to a dealer are treated differently. Whenever the owner of a registered vehicle transfers or assigns his title to a dealer, the transferor is required to endorse the certificate of title and to deliver title and registration to the dealer. The Act does not contemplate nor

provide that in transfers to dealers the vehicle will be registered by the dealer or that title be issued in the dealer's name. Furthermore, the dealer is exempted from those provisions of the Act which require a transferee to present certificates of registration and title, properly endorsed, to the Department within 20 days following transfer of ownership. Although the Act does not require reregistration by the dealer, the dealer is obligated to give the Department notice of the transfer to him.[7]

The operative effect of AS 28.10.-370 is contingent upon the forwarding of the certificates of title and registration to the Department. Since there is no delivery of these documents to the Department in transfers to dealers,[8] AS 28.10.370 is inapplicable in these transactions. Consequently, a transfer to a dealer is accomplished when the owner of a registered vehicle transfers or assigns his interest or title to a dealer by endorsing and delivering to the dealer his certificate of title and registration. We hold that when this transaction takes place, the dealer becomes the "owner" of the vehicle, within the meaning of that term as used in AS 28.10.350(b), which provides in part:

The owner may notify the department of the transfer or assignment of his title or interest in the vehicle within 10 days fol-

---

3. AS 28.10.360.

4. AS 28.10.370.

5. *Id.*

6. § 1 ch. 97 SLA 1968 is now codified as AS 28.10.350(b) : ·
   The owner may notify the department of the transfer or assignment of his title or interest in the vehicle within 10 days following transfer or assignment. This notification shall constitute a valid transfer under § 370 of this chapter.
   The legislative intent in the passage of this amendment is reflected in the Judiciary Committee Report for House Bill No. 27:
   This bill provides for a method for the owner of a vehicle, who sells his vehicle to give notice to the Department of Revenue that he is no longer the owner of the vehicle. Under current law, until title document is submitted by the buyer showing the transfer, the seller of the vehicle is still con-

sidered to be the owner of the vehicle. The committee substitute does not make it mandatory for the seller to give such notice, but permissive. Were the provision to remain mandatory on the part of the owner the paperwork of the Department of Revenue for transfering title would be considerably increased and the issuance of new titles would be considerably slowed down. H.J. 583 March 16, 1968.

7. AS 28.10.390.

8. Dealers under AS 28.10.390 are required to notify the Department when registered motor vehicles are transferred to them. This notice does not serve to effectuate a transfer. The purpose of this provision, like the general purpose of the statutes relating to the transfer of vehicles, is to provide an accurate public record for determining the legal owner of a motor vehicle.

lowing transfer or assignment. This notice shall constitute a valid transfer under § 370 of this chapter.

Thus the dealer as an unregistered owner, by giving the required notice, may sell the vehicle and effect a valid delivery and transfer of title to the purchaser without the necessity of waiting for the issuance of new certificates of registration and title in the purchaser's name under AS 28.10.370.[9] Pursuant to the statutory scheme, the dealer divests himself of ownership of the vehicle by such notice.

■ Having resolved the applicability of the seller notice provision to dealers, we must further determine the date the transfer is deemed to have occurred—the date notice is given or the date of the actual transfer. If the intent of the statutory scheme was to make the effective date of the transfer the date notice was given, rather than the date the transfer was actually made, there would seem to be no point in allowing the transferor ten days within which to give notice in order to effectuate a valid transfer without the issuance of new certificates of registration and ownership. If the transferor did not wish to be saddled with all of the incidents of ownership while the vehicle was in the buyer's possession and under his control, the former would be obliged to retain possession and control of the vehicle until new certificates of registration and title had been issued under § 370. This being the case, the ten-day notice provision of § 350(b), as an exception to § 370, would be meaningless. To obviate such a result, we hold that when notice is timely given by the transferor under the notice provisions, the transfer is deemed completed as of the date of the transaction.[10]

■ In the case at bar, the sale to Black was made on August 19. Under the Act, the dealer had ten days in which to give the Department notice in order to accomplish a transfer under the notice provisions of AS 28.10.350(b). Black signed the necessary documents on August 19 to apply for new certificates of title and registration. These documents were then forwarded to Alaska Sales' title clerk on Friday, August 20. The title clerk's function was to complete all the necessary paperwork so that the documents might be forwarded to the Department. These necessary documents were hand delivered on August 23, the following Monday. This delivery of the documents satisfied the notice provisions of AS 28.10.350(b). The Department's receipt of the documents on August 23 was well within the ten-day period of AS 28.10.350(b).

As the Act was complied with, we hold the transaction was valid and effective on the date of August 19. At the time the accident occurred on August 22, Alaska Sales was no longer the owner of the motor vehicle sold to Black.

Appellant places a heavy reliance on Safeco Insurance Co. v. Northwestern Mutual Ins. Co.[11] Although the Supreme Court of Montana interpreted a motor vehicle statute similar to AS 28.10.370,[12] a close reading of *Safeco* reveals it arose out of a substantially different factual setting. The facts were that on May 9, 1960, Harlan Dean, the owner of a 1958 Hillman automobile, went to Bear Paw Sales & Service with the hopes of obtaining a better

9. At such time as the dealer should resell the vehicle, he must deliver to his transferee the endorsed certificates of title and registration which the dealer had received initially from his transferor. In turn, the transferee from the dealer is under a duty to present the documents to the Department for issuance of title and new registration.

10. Since the application of these motor vehicle statutes raises serious questions involving statutory recognition of owners who possess none of the incidents of ownership or control,

our holding is limited to facts such as are presented in this case where the seller notifies the Department within the statutory period, and we do not purport to resolve the question of liability when the seller gives notice after the time period prescribed in AS 28.10.350(b).

11. 142 Mont. 155, 382 P.2d 174 (1963).

12. Montana R.C.M. 53–109(d) provides that title is deemed not to have passed until the register issues a certificate of title and registration card to the new owner.

motor vehicle. Dean was attracted to a 1958 Studebaker. After obtaining Bear Paw's consent, Dean drove home in the Studebaker to show it to his wife. He left his Hillman with the dealer for security. On May 10, Dean communicated to the car dealer his intention to keep the Studebaker. On May 11, Dean was involved in a serious car accident with the Studebaker. Dean was insured by Safeco, and Bear Paw Sales was insured by a blanket garage owner's liability insurance policy "covering vehicles owned by Bear Paw while used in its business or while being driven with its permission and consent."[13] Bear Paw's insurance company refused to accept liability on the policy. Safeco, who insured Dean, likewise did not accept liability and instituted a declaratory judgment action to resolve the matter of coverage. Neither the dealer nor Dean made any attempts to comply with the registration requirements.

As was said by the Montana Supreme Court:

> Nothing was signed, no order was signed nor paper of any kind and Dean still had title to the Hillman in his possession and Bear Paw had title to the Studebaker. Bear Paw had no records on the Hillman. Following Dean's recovery from his injuries either he or his wife took the Hillman car back from the sales lot of Bear Paw and the matter was at an end.[14]

Under these circumstances, the court held that the failure to comply with the statutory requirements precluded Bear Paw from asserting that it was no longer the owner of the Studebaker. It was carefully pointed out, however, that once statutory compliance occurs, the transfer would have been considered effective as of the day of the transaction.[15] Since there was statutory compliance in the case at bar, the doctrine of relation back as applied by the Supreme Court of Montana in *Safeco* provides additional support for affirming the

superior court decision. The United States District Court in Montana has likewise applied the relation back doctrine on facts strikingly similar to those involved here.[16]

In view of the explicit language found in AS 28.10.370 relating to transfer of vehicle ownership and provisions of AS 28.-10.350(b) providing an opportunity to validate a transfer prior to the issuance of certificates of title and registration by the Department, we find it unnecessary to reconcile the statutory sections of AS 28.10 with contract and sales law.

Affirmed.

RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ., not participating.

---

13. 382 P.2d at 175.

14. *Id.* at 177.

15. 382 P.2d at 179.

16. Phoenix Insurance Co. v. Newell, 329 F. Supp. 172 (D.Mont.1971). *See also* cases cited therein.